STATE of Texas, Texas General Land Office, and Texas Land Commissioner, Petitioners,

v.

Herbert W. HOLLAND, Respondent.

No. 05–0292.

Supreme Court of Texas.

Argued Sept. 27, 2006.

Decided April 20, 2007.

must decide whether a takings claim is the proper avenue for a patentholder who performs services under contract with the State to assert patent rights. We hold that it is not when, as here, the State's use is pursuant to colorable contract rights. Because Holland cannot state a takings claim for the State's alleged unlawful use of his patent, the State is entitled to immunity from suit. Accordingly, we reverse the court of appeals' judgment and dismiss Holland's claim for want of jurisdiction.

## I. Background

In the late 1990s, the General Land Office (GLO) began working on a project to abate pollution resulting from commercial fishing boats illegally discharging oily bilge water into coastal waters. The GLO contracted with two companies, Spill Removal Products, Inc. (SRP) and Pollution Prevention Products (PPP), to provide design services, components, installation and consulting services for the construction of three bilge water processing facilities located in Port Isabel, Port Lavaca, and Palacios. Herbert Holland developed the polymer-based pollution filters used in the facilities and the process for their installation. According to Holland, he was the "managing member" of PPP and the president of SRP, and it is undisputed that all of the GLO's contacts on the project were with him. The three processing facilities were completed by 2001, and all three used Holland's polymer-based filtration system to extract oil from contaminated bilge water. The GLO paid more than $160,000 to PPP and SRP pursuant to their agreement.

Holland applied for a patent on his filtration process in 1998, and in 2000 received Patent No. 6,027,653 for a "Method of Removing Organic Compounds from Air and Water Columns," referred to as the "'653 patent." Claim 13 of the patent describes a method of removing and col-

Greg Abbott, Attorney General of Texas, Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, Office of the Attorney General, Kristofer S. Monson, Assistant Solicitor General, Austin, for Petitioners.

Thomas W. Sankey, Greg M. Luck, Godwin Gruber, LLP, Michael T. McLemore, Danny L. Williams, Williams Morgan & Amerson, Houston, Eric G. Walraven, Godwin, Pappas & Ronquillo, LLP, Dallas, for Respondent.

Justice O'NEILL delivered the opinion of the Court.

Herbert Holland developed a cost-effective process to clean oil-contaminated bilge water. The State of Texas, seeking to abate oil pollution in its coastal waters, contracted with, and paid more than $160,000 to, Holland's companies for assistance in designing and constructing filtration units along the Texas Gulf Coast. Holland later received a patent on the decontamination process and began demanding additional payments as patent royalties. When the State refused to pay, Holland filed this suit claiming the State's unauthorized use of his patented technology constituted a taking under Article I, section 17 of the Texas Constitution. We

lecting contaminants, first by pretreating the water and then directing it through a series of separation and filtration media.[1] Claim 19 describes the apparatuses used in the separation and filtration processes. The GLO facilities use the method and apparatuses described in Claims 13 and 19 of the patent. In 2002, Holland contacted the GLO and began demanding payment of patent royalties for the three facilities' use of his patented process. The GLO's contracts with PPP and SRP did not provide for the payment of patent royalties.

When the GLO refused to make any additional payments, Holland sued the State of Texas, the GLO, and the Texas Land Commissioner (collectively "the State") alleging that use of his patented process at the Palacios reclamation facilities infringed the '653 patent.[2] He further alleged that the State's use of his patented process constituted a taking of his property for public use without compensation in violation of Article I, section 17 of the Texas Constitution. After entering a general denial, the State filed a plea to the jurisdiction which the trial court denied. The court of appeals affirmed, holding that Holland had adequately pled a takings claim against the State for which immunity was waived. 221 S.W.3d at 643. We granted the State's petition for review to examine the State's sovereign immunity under the circumstances presented.

## II. Jurisdiction

■ Because this is an interlocutory appeal from the trial court's denial of a juris-

dictional plea, and there was no dissent in the court of appeals, we have jurisdiction only if the court of appeals' decision conflicts with a prior decision of this Court or of another court of appeals. TEX. GOV'T CODE §§ 22.001(a)(1), (2). Decisions conflict for jurisdictional purposes "when there is inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." *Id.* § 22.001(e). As we explain below, the trial court erred in denying the State's plea to the jurisdiction because the State was acting under color of contract in utilizing the treatment process that the '653 patent covers. Because Holland's claim does not arise as a taking under the constitution but sounds in contract, the court of appeals' decision conflicts with our decision in *General Services Commission v. Little–Tex Insulation Co.*, 39 S.W.3d 591 (Tex.2001), and we have jurisdiction to resolve the conflict.

## III. Standard and Scope of Review

■ A plea to the jurisdiction based on sovereign immunity challenges a trial court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004). A plea questioning the trial court's jurisdiction raises a question of law that we review *de novo. Id.* at 226. We focus first on the plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists.

---

1. A patent "claim" sets forth an invention's parameters and describes in some detail "the subject matter which the [patent] applicant regards as his invention." 35 U.S.C. § 112; *see* 3 DONALD S. CHISUM, CHISUM ON PATENTS § 8.01 (2005).

2. The State submitted an affidavit attesting that the three facilities were completed in 1998. In response, Holland submitted an af-

fidavit disputing the State's affidavit to the extent it asserted that the Palacios facility "currently in use and operating was completed in 1998." This dispute is irrelevant to our analysis, which focuses on the assistance Holland provided in designing the three facilities. Holland's petition in the trial court acknowledges that all three facilities use the same process and apparatus to process bilge water.

*Id.* We construe the pleadings liberally, looking to the pleader's intent. *Id.* If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead. *Id.* at 226–27. In some instances, however, a plea to the jurisdiction may require the court to consider evidence pertaining to jurisdictional facts. *Id.* at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000). A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted. *Miranda*, 133 S.W.3d at 227–28.

## IV. Analysis

The State contends Holland's petition does not present a viable takings claim because the State designed and constructed the bilge water reclamation facilities, which utilized the process described in Holland's patent, under color of contract. According to the State, it is of no moment that its contract was with Holland's companies rather than Holland himself; rather, the proper focus is whether the State had the requisite intent to take property for public use and thus was invoking its eminent-domain powers. Holland responds, and the court of appeals agreed, that the State did not establish as a matter of law that it was acting under color of contract with Holland rather than with PPP and SRP. 161 S.W.3d at 233. Holland contends the State's contract with his companies is immaterial because he holds the '635 patent individually, and whether or not the State was acting pursuant to an implied contract with him is a disputed fact question that the factfinder must resolve. We agree with the State.

 Absent an express waiver of its sovereign immunity, the State is generally immune from suit. *State v. Shumake*, 199 S.W.3d 279, 283 (Tex.2006). But sovereign immunity does not shield the State from a claim based upon a taking under Article I, section 17 of the Texas Constitution, known as the "takings clause." *Little–Tex Insulation Co.*, 39 S.W.3d at 598. The takings clause mandates that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17. To establish a takings claim under Article I, section 17, the claimant must show that a governmental actor acted intentionally to take or damage property for a public use. *Little–Tex Insulation Co.*, 39 S.W.3d at 598. When the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent-domain powers and thus retains its immunity from suit. *Id.* at 598–99. This is because the State may "wear[ ] two hats: the State as a party to the contract and the State as sovereign. The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers." *Id.* at 599 (citations omitted).

Holland contends he had no contract with the State and therefore the State's use of his patent was unauthorized. But absence of an express contract between Holland and the State, or uncertainties about the existence of an implied contract between them, are immaterial to determining the capacity in which the State is acting. When we articulated the principle distinguishing the State's eminent-domain capacity from its contractual capacity in *Little–Tex*, we relied on *State v. Steck Co.*, 236 S.W.2d 866, 869 (Tex.Civ.App.-Austin 1951, writ ref'd). In that case, Steck, a printer, sought to recover from the State

the value of 39,603,690 cigarette tax stamps it had manufactured and delivered to the State. *Id.* at 867. The year before those stamps were delivered, Steck had manufactured, delivered, and been paid for 300,000,000 cigarette stamps under a competitively bid, one-year contract. *Id.* Pursuant to an oral agreement with the chief of the printing division of the Cigarette Tax Stamp Board, Steck continued to manufacture and deliver the stamps after the first year's contract had expired. *Id.* When the State refused payment, Steck sued. *Id.* The trial court determined that Steck was entitled to compensation under Article I, section 17. *Id.* at 867–68. We disagreed. First, we held there was no enforceable contract because the State had failed to abide by the legally required bidding procedures. *Id.* at 868. We also held that Steck could not assert a takings claim under Article I, section 17. *Id.* at 869. We reasoned that because Steck had delivered and the State had accepted the stamps under the purported, but nonexistent, contract, Steck could not contend that the stamps had been taken under the State's eminent-domain power. *Id.*

Similarly, in *A.C. Aukerman Co. v. State of Texas,* 902 S.W.2d 576 (Tex.App.-Houston [1st Dist.] 1995, writ denied), the State paid independent highway-construction contractors who had used concrete roadway barriers manufactured according to a process over which Aukerman asserted patent rights. *Id.* at 577. Claiming the State had obtained the benefits of his patents without paying compensation, Aukerman sued the State for inverse condemnation. *Id.* The court of appeals affirmed the trial court's summary judgment in the State's favor, determining that any cause of action Aukerman might have was for patent infringement against the independent contractors. *Id.* at 578. Even if the contractors had infringed Aukerman's patent, the court held, the State was merely a party to contracts with them and, without more, could not be liable for patent infringement. *Id.* (citing *Am. Graphophone Co. v. Gimbel Bros.,* 234 F. 361, 368 (S.D.N.Y.1916) (holding that a purchaser of a product which has been made in infringement of a patented process cannot be liable as an infringer)). Having acquired the concrete barriers through its third-party contract, the court concluded the State lacked the intent necessary to establish a takings claim. *Id.* at 578–79.

In this case, the State presented uncontroverted evidence that Holland voluntarily provided, and the State accepted, his filtration process along with his design assistance pursuant to contractual agreements with SRP and PPP. Whether or not a contract may be implied between the State and Holland individually, the State accepted Holland's product and his services under color of its contracts with SRP and PPP, and not pursuant to its powers of eminent domain. Any claim for patent infringement Holland might have would be against SRP and PPP, not the State as a mere party to a contract with them. Lacking the requisite intent to take Holland's patented process under its eminent-domain powers, the State is not subject to liability under article I, section 17 of the Texas Constitution. Accordingly, the trial court erred in denying the State's plea to the jurisdiction.

## V. Conclusion

We reverse the court of appeals' judgment and dismiss the case for lack of jurisdiction.