NUMBER 13-07-00530-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 
 

BROWNSVILLE PUBLIC UTILITIES BOARD, Appellant,


v.
 


COATINGS, INC., Appellee.

 


On appeal from the 404th District Court of Cameron County, Texas.


 




MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Benavides


Memorandum Opinion by Justice Benavides



 Appellant, the Brownsville Public Utilities Board ("BPUB"), brings this interlocutory
appeal from an order denying its plea to the jurisdiction. See Tex. Civ. Prac. & Rem. Code
Ann. § 51.014(a)(8) (Vernon 2008). By a single issue, BPUB argues that appellee,
Coatings, Inc., failed to establish a waiver of sovereign immunity over its claims for breach
of contract and for an unconstitutional taking under the Texas Constitution. See Tex.
Const. art. I, § 17. We reverse and render, in part, and reverse and remand, in part. 
Specifically, we remand the breach of contract claim, and we render judgment dismissing
the takings claim for lack of subject-matter jurisdiction.

I. Background

 BPUB is an entity created by the City of Brownsville to operate the City's utilities. 
Coatings is in the business of painting and repairing water towers. On January 28, 1999,
Coatings contracted with BPUB to repair and paint two water towers located in Brownsville. 
According to Coatings, during the course of the work on the first water tower, it discovered
that the tower was rusted, corroded, and unstable. The water tower's condition required
several repairs, which resulted in change orders to the contract to allow for additional work. 
After Coatings performed the work, BPUB refused to pay the amounts required by the
change orders. Coatings sued, and BPUB eventually paid.

 With respect to the second tower, (1) which is the subject of the underlying lawsuit,
Coatings again discovered that the tower was in need of extensive repairs. BPUB agreed
to have Coatings perform the repairs to make the water tower usable. While the repairs
were being made, Hurricane Bret was approaching the southern Texas coast. BPUB
required Coatings to perform additional repairs to make the tower safe for the hurricane. 
Coatings argues that BPUB never paid for this work.

 Coatings continued the repairs, but discovered that the water tower was in worse
shape than previously determined. Coatings informed BPUB that the water tower's
condition was too dangerous to provide a safe workplace for its workmen and that certain
repairs were needed to ensure the workmen's safety. Coatings asserts that BPUB insisted
that Coatings continue working in an unsafe environment. 

 Because Coatings continued to insist on repairs to ensure safety, on November 5,
1999, BPUB terminated the contract and ordered Coatings to cease work. BPUB asserted
that Coatings' work was inadequate and that Coatings breached the contract. BPUB's
letter terminating the contract also purported to make a demand on Coatings' performance
bond that the surety either complete the project or provide financial recovery. Thereafter,
in November 2000, BPUB publicly announced that it would tear down the second water
tower. 

 According to BPUB, the surety refused to either require Coatings to complete the
job or to hire another contractor, as BPUB alleged was required under the contract. Thus,
on June 6, 2002, BPUB made a claim for $607,000 against the bonding company, and a
few months later the bonding company was placed in liquidation. The bond claim is still
pending. 

 On November 5, 2003, Coatings filed suit against BPUB. (2) Coatings alleged breach
of contract and sought damages and attorney's fees. (3) It claimed that BPUB breached the
contract by refusing to pay money owed under the contract, by terminating the contract
before its completion, and by making a claim on Coatings' performance bond. It asserted
that BPUB owed $90,000 under the contract for work that was previously performed. It
further alleged that BPUB retained $18,000 of Coatings's money as part of the contract,
and when BPUB terminated the contract, it still owed the retainage. Furthermore, Coatings
alleged that BPUB prevented Coatings from completing the work to be performed under
the contract, which would have entitled Coatings to an additional $245,000 under the
contract. (4) Finally, Coatings alleged that by making a demand on its bond, BPUB breached
the contract and prevented Coatings from obtaining a bond for any new project of a
significant size. Thus, Coatings claimed it suffered $2.4 million dollars in damages from
lost contracts. 

 BPUB filed a general denial and a counter-claim for breach of contract and for
attorney's fees, alleging that Coatings first breached the contract. BPUB claimed that it
suffered damages in an unspecified amount, including damages for outside engineering
consulting fees, demolition costs, liquidated damages for delay, "value of the Contract
which was defaulted by Coatings and not performed and ultimately provided no value to
BPUB." 

 On September 14, 2006, BPUB filed a motion to dismiss for lack of subject-matter
jurisdiction. It argued that Coatings's claims were barred by sovereign immunity to the
extent the claims exceeded amounts offsetting BPUB's counter-claim. Furthermore, BPUB
argued that Coatings failed to comply with the pre-suit notice requirements in the City of
Brownsville's charter. 

 Coatings thereafter supplemented its petition to include an inverse condemnation
claim under article I, section 17 of the Texas Constitution. See Tex. Const. art. I, § 17. 
It alleged that BPUB filed an excessive bond claim. Specifically, Coatings contended that
BPUB's counterclaim for breach of contract was only for $90,000, while its bond claim was
for over $600,0000. Coatings asserted that the bond claim was an intentional act and an
attempt to extort money from Coatings or to damage Coatings. BPUB moved to strike the
supplemental petition.

 On August 13, 2007, the trial court denied BPUB's motion to dismiss for lack of
subject-matter jurisdiction. This interlocutory appeal ensued. See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(8). 

II. Standard of Review

 "A plea to the jurisdiction based on sovereign immunity challenges a trial court's
jurisdiction." State v. Holland, 221 S.W.3d 639, 642 (Tex. 2007). Whether the trial court
lacks subject-matter jurisdiction is a question of law that we must review de novo. Id.; Tex.
Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). Initially, we must
determine whether the plaintiff's petition pleaded facts that affirmatively demonstrate that
jurisdiction exists. Holland, 221 S.W.3d at 642. "We construe the pleadings liberally,
looking to the pleader's intent. If the pleadings are insufficient to establish jurisdiction but
do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the
opportunity to replead." Id. at 643. A trial court may be required to consider evidence if
jurisdictional facts are disputed. Id. In those circumstances, the trial court should deny the
plea if a fact issue is presented as to the court's jurisdiction. Id. Otherwise, "if the relevant
undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted." 
Id.

III. Breach of Contract Claim

 First, BPUB argues that under Tooke v. City of Mexia, 197 S.W.3d 325 (Tex. 2006)
and Reata Construction Co. v. City of Dallas, 197 S.W.3d 371 (Tex. 2006), it has
governmental immunity from suit for Coatings's breach of contract claim, except to the
extent of its counterclaim. Specifically, BPUB argued that the contract was entered into
before September 1, 2005, when Texas Local Government Code section 271.152 became
effective. Act of May 20, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Sess. Law Serv.
1548, 1550 (Vernon) (codified at Tex. Local Gov't Code Ann. § 271.152 (Vernon 2005)).
BPUB had previously waived sovereign immunity only to the extent of the counterclaim,
thus, BPUB retained immunity for any amount exceeding the counterclaim. Coatings
concedes this argument on appeal. Accordingly, we hold that BPUB retains governmental
immunity from suit for any award of damages in excess of its counterclaim. We reverse
the trial court's order denying BPUB's plea to the jurisdiction as to the breach of contract
claim and remand that claim to the trial court, subject to the foregoing limitation.

IV. Notice Pursuant to City Charter

 BPUB next asserts that Coatings failed to satisfy the notice requirements in the
Brownsville City Charter and that this failure is a jurisdictional defect. The charter provides:

 The City shall not be liable on account of any claim for specific performance,
breach of contract, damages to the person, or to any property, or for any
character of tort, unless the person asserting such claim shall give the City
written notice of such claim and of the facts upon which it is based within six
(6) months from the time it is claimed such cause of action arose, and no
such suit shall be instituted or maintained on such claim until the expiration
of ninety (90) days from the time such notice shall have been given.


 Said written claim shall state the amount of damages claimed and demanded
of the city, and [is] to be accompanied by a true statement under oath as to
the nature and character and extent of such injury and damages, the time,
date and place when and where same happened, the conditions causing the
same, with a detailed statement of each item of such damages or injuries,
a list of the names and addresses of witnesses, if known to or ascertainable
by the affiant, who witnessed said injury or the accident or happening
causing the same or the damages resulting from same.


City of Brownsville Charter, art. II, § 8 (Ord. No. 93-1270), available at
http://www.municode.com/Resources/gateway.asp?pid=10297&sid=43 (last visited Mar.
2, 2009). BPUB asserts that because it is an agent of the city of Brownsville, any claim
against it is subject to the notice requirements in the charter, which are administrative
prerequisites to suit. Because Coatings did not allege that it provided the requisite notice,
BPUB argues that the trial court lacked jurisdiction over the claims. 

 However, other than quoting the city charter, BPUB provides no authority for the
proposition that such a notice provision is a jurisdictional prerequisite to suit. See City of
McAllen v. Zellers, 216 S.W.3d 913, 916 (Tex. App.-Corpus Christi 2007, no pet.) ("The
party asserting that the district court lacks subject-matter jurisdiction over a claim typically
within that court's jurisdiction should point us to some legislative act that removes
jurisdiction from the district court." (emphasis added)). Accordingly, we find that this
argument is inadequately briefed and presents nothing for our review. See Tex. R. App.
P. 38.1(i). V. Takings Claim

 Finally, BPUB argues that it enjoys governmental immunity from Coatings's alleged
takings claim under article I, section 17 of the Texas Constitution. See Tex. Const. art. I,
§ 17. (5)
 Sovereign immunity does not bar inverse condemnation claims under this
constitutional provision. Holland, 221 S.W.3d at 643. The takings provision in the
constitution operates as a waiver of sovereign immunity to the extent that the plaintiff
alleges a valid takings claim. See Tex. Parks & Wildlife Dep't v. Calloway, 971 S.W.2d
145, 149 (Tex. App.-Austin 1998, no writ). "To establish a takings claim under Article I,
section 17, the claimant must show that a governmental actor acted intentionally to take
or damage property for a public use." Holland, 221 S.W.3d at 643. Whether a plaintiff has
met this burden is a question of law. Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39
S.W.3d 591, 598 (Tex. 2001).

 Coatings asserts that BPUB made an excessive demand on the performance bond,
injuring its bonding capacity. Coatings alleges that when compared to the mere $90,000
it cost BPUB to tear down the water tower, which constitutes the full amount of BPUB's
counterclaim, the $600,000 bond claim is so excessive that it is indisputably outside the
contract's terms. Thus, it constitutes a taking of property for public use, and BPUB
intended to injure Coatings.

 BPUB points to the performance bond in the record, which allows BPUB to demand
that Coatings and its surety reimburse and repay BPUB "all outlay and expense which
[BPUB] may incur in making good any default." It asserts that the bond claim was
appropriate under this provision. BPUB argues that where a governmental entity's claimed
right to money or property is a matter of contract dispute, the requisite governmental intent
to take the property cannot be shown. Because BPUB's claim on Coatings's performance
bond is the subject matter of a contractual dispute, BPUB reasons that Coatings cannot
establish the requisite intent to take property without just compensation. We agree that
BPUB lacked the requisite intent for Coatings to establish a takings claim. (6)

 In Holland, the Texas Supreme Court reiterated the well-established rule that a
governmental entity's colorable contract rights may prevent a finding that it had the
necessary intent to take property for public use:

 When the government acts pursuant to colorable contract rights, it lacks the
necessary intent to take under its eminent-domain powers and thus retains
its immunity from suit. This is because the State may "wear [ ] two hats: the
State as a party to the contract and the State as sovereign. The State, in
acting within a color of right to take or withhold property in a contractual
situation, is acting akin to a private citizen and not under any sovereign
powers." 


Id. at 643 (quoting Little-Tex Insulation Co., 39 S.W.3d at 598-99). Nevertheless, Coatings
argues that the bond claim was "outside the contract" because it was exorbitant. However,
Texas courts have held that even if the governmental entity's interpretation of the contract
under which it acts is wrong, if its claim is made under a color of a contractual right, the
requisite intent is lacking. See id. at 643 ("But absence of an express contract between
Holland and the State, or uncertainties about the existence of an implied contract between
them, are immaterial to determining the capacity in which the State is acting."); Tex. S.
Univ. v. State Street Trust & Bank Co., 212 S.W.3d 893, 910-911 (Tex. App.-Houston [1st
Dist.] 2007, pet. denied) (holding intent not established where governmental entity acquired
property by virtue of contract, even though governmental entity conceded that contract was
invalid); Green Int'l, Inc. v. State, 877 S.W.2d 428, 434 (Tex. App.-Austin 1994, writ
dism'd) ("Even if the government were to withhold property or payment it believed to be
due the other party, the government would still be acting within the color of right to the
extent it had a good faith belief that its actions were justified due to disagreements over
payment due or performance under the contract.") (emphasis added); see also Brown
Water Marine Serv., Inc. v. Aransas County Navigation Dist. No. 1, No. 13-07-055-CV,
2008 WL 1822727, at *3-4 (Tex. App.-Corpus Christi Apr. 24, 2008, pet. denied) (mem.
op.) (holding intent not established when governmental entity dealt with plaintiff in
contractual setting, regardless of whether contract was actually formed). (7)

 In this case, Coatings voluntarily executed the performance bond to guarantee its
performance. In fact, in Coatings' pleadings, it alleged that BPUB breached its contract
by making the bond claim in the amount alleged. Having done so, it cannot now claim that
the demand for payment from its surety was made pursuant to BPUB's power of eminent
domain rather than in its private capacity as party to the contract. (8)
 See Holland, 221
S.W.3d at 664. Although Coatings pleaded that BPUB's bond claim was "an intentional
act and an attempt to extort money from the plaintiff," we hold that the pleadings
demonstrate that BPUB was acting in its private, contractual capacity in making the bond
claim. See id. We sustain this part of BPUB's issue, and we reverse the trial court's order
denying the plea to the jurisdiction and render judgment dismissing the takings claim for
lack of subject-matter jurisdiction.

VI. Conclusion

 Having sustained BPUB's issue in part, we reverse and render, in part, and reverse
and remand, in part. Specifically, we reverse the trial court's order denying the plea to the
jurisdiction, and we (1) render judgment dismissing the takings claim for lack of jurisdiction,
and (2) remand the breach of contract claim for further proceedings consistent with this
opinion.

 ________________________________

 GINA M. BENAVIDES,

 Justice



Memorandum Opinion delivered and

filed this the 19th day of March, 2009. 


 
1. The pleadings refer to this tower as "Elevated Water Tank No. 2 in the City of Brownsville."
2. Coatings also sued the City of Brownsville and Pate Engineers, Inc. The trial court granted Pate
Engineers' motion for summary judgment, and the City of Brownsville was nonsuited. Thus, they are no
longer parties to the case. 
3. Coatings also alleged fraud and conspiracy, but it later dropped those claims.
4. In its appellate brief, BPUB asserts that the contract provided for payment of $449,075 with 210
calendar days to complete the work. It alleges that a total of five change orders were approved, totaling an
additional $93,153 and granting an additional 62 calendar days to complete the work. Thus, the total contract
amount was $542,228. BPUB asserts that it paid $354,927.65 prior to terminating the contract, with a
remaining fund balance of $187,300.35. 
5. Article I, section 17 of the Texas Constitution provides:


 No person's property shall be taken, damaged or destroyed for or applied to public use
without adequate compensation being made, unless by the consent of such person; and,
when taken, except for the use of the State, such compensation shall be first made, or
secured by a deposit of money; and no irrevocable or uncontrollable grant of special
privileges or immunities, shall be made; but all privileges and franchises granted by the
Legislature, or created under its authority shall be subject to the control thereof.


Tex. Const. art. I, § 17. 

6. BPUB also argues that Coatings failed to establish a definitive property interest and that any taking
was for public use. Because of our disposition, we need not address these arguments. Tex. R. App. P. 47.1.
7. Coatings argues that Brown Water is distinguishable because that appeal was from an order
granting summary judgment to the navigation district, whereas here, the issue is being raised in a plea to the
jurisdiction. Brown Water Marine Serv., Inc. v. Aransas County Navigation Dist. No. 1, No. 13-07-055-CV,
2008 WL 1822727, at *3-4 (Tex. App.-Corpus Christi Apr. 24, 2008, pet. denied) (mem. op.). Coatings
argues that the question we must answer is whether Coatings pleaded sufficient facts that conceivably could
constitute a taking, and it pleaded intent. We agree that the burden of proof is different in these two contexts;
however, Brown Water is nevertheless instructive. 
8. Coatings cites several cases, none of which require a different holding. Most of the cases cited by
Coatings do not involve a contractual setting. See, e.g., City of Keller v. Wilson, 168 S.W.3d 802, 808 (Tex.
2005) (holding city was not liable for flooding plaintiffs' property); City of Dallas v. Jennings,142 S.W.3d 310,
313-14 (Tex. 2004) (holding city was not liable for flooding plaintiffs' home while attempting to unclog sewer
line); Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980) (holding city could be liable for taking where
police officers set fire to plaintiffs' home while attempting to recapture escaped convicts); County of Burleson
v. Gen. Elec. Capitol Corp., 831 S.W.2d 54, 60 (Tex. App.-Houston [14th Dist.] 1992, writ denied) (holding
sovereign immunity did not bar takings claim based on improper use of taxing authority). The cases cited by
Coatings that do involve contractual settings require us to rule in BPUB's favor. See Tex. S. Univ. v. State
Street Trust & Bank Co., 212 S.W.3d 893, 910-11 (Tex. App.-Houston [1st Dist.] 2007, pet. denied); Green
Int'l, Inc. v. State, 877 S.W.2d 428, 434 (Tex. App.-Austin 1994, writ dism'd).