

**NUMBER 13-07-00530-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**BROWNSVILLE PUBLIC UTILITIES BOARD,**                                  **Appellant,**

**v.**

**COATINGS, INC.,**                                  **Appellee.**

---

**On appeal from the 404th District Court of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant, the Brownsville Public Utilities Board ("BPUB"), brings this interlocutory appeal from an order denying its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2008). By a single issue, BPUB argues that appellee, Coatings, Inc., failed to establish a waiver of sovereign immunity over its claims for breach of contract and for an unconstitutional taking under the Texas Constitution. *See* TEX.

CONST. art. I, § 17.  We reverse and render, in part, and reverse and remand, in part. Specifically, we remand the breach of contract claim, and we render judgment dismissing the takings claim for lack of subject-matter jurisdiction.

## I. BACKGROUND

BPUB is an entity created by the City of Brownsville to operate the City's utilities. Coatings is in the business of painting and repairing water towers.  On January 28, 1999, Coatings contracted with BPUB to repair and paint two water towers located in Brownsville. According to Coatings, during the course of the work on the first water tower, it discovered that the tower was rusted, corroded, and unstable. The water tower's condition required several repairs, which resulted in change orders to the contract to allow for additional work. After Coatings performed the work, BPUB refused to pay the amounts required by the change orders.  Coatings sued, and BPUB eventually paid.

With respect to the second tower,[1] which is the subject of the underlying lawsuit, Coatings again discovered that the tower was in need of extensive repairs.  BPUB agreed to have Coatings perform the repairs to make the water tower usable.  While the repairs were being made, Hurricane Bret was approaching the southern Texas coast.  BPUB required Coatings to perform additional repairs to make the tower safe for the hurricane. Coatings argues that BPUB never paid for this work.

Coatings continued the repairs, but discovered that the water tower was in worse shape than previously determined.  Coatings informed BPUB that the water tower's condition was too dangerous to provide a safe workplace for its workmen and that certain

---

[1] The pleadings refer to this tower as "Elevated Water Tank No. 2 in the City of Brownsville."

2

repairs were needed to ensure the workmen's safety. Coatings asserts that BPUB insisted that Coatings continue working in an unsafe environment.

Because Coatings continued to insist on repairs to ensure safety, on November 5, 1999, BPUB terminated the contract and ordered Coatings to cease work. BPUB asserted that Coatings' work was inadequate and that Coatings breached the contract. BPUB's letter terminating the contract also purported to make a demand on Coatings' performance bond that the surety either complete the project or provide financial recovery. Thereafter, in November 2000, BPUB publicly announced that it would tear down the second water tower.

According to BPUB, the surety refused to either require Coatings to complete the job or to hire another contractor, as BPUB alleged was required under the contract. Thus, on June 6, 2002, BPUB made a claim for $607,000 against the bonding company, and a few months later the bonding company was placed in liquidation. The bond claim is still pending.

On November 5, 2003, Coatings filed suit against BPUB.[2] Coatings alleged breach of contract and sought damages and attorney's fees.[3] It claimed that BPUB breached the contract by refusing to pay money owed under the contract, by terminating the contract before its completion, and by making a claim on Coatings' performance bond. It asserted that BPUB owed $90,000 under the contract for work that was previously performed. It further alleged that BPUB retained $18,000 of Coatings's money as part of the contract,

---

[2] Coatings also sued the City of Brownsville and Pate Engineers, Inc. The trial court granted Pate Engineers' motion for summary judgment, and the City of Brownsville was nonsuited. Thus, they are no longer parties to the case.

[3] Coatings also alleged fraud and conspiracy, but it later dropped those claims.

and when BPUB terminated the contract, it still owed the retainage. Furthermore, Coatings alleged that BPUB prevented Coatings from completing the work to be performed under the contract, which would have entitled Coatings to an additional $245,000 under the contract.[4] Finally, Coatings alleged that by making a demand on its bond, BPUB breached the contract and prevented Coatings from obtaining a bond for any new project of a significant size. Thus, Coatings claimed it suffered $2.4 million dollars in damages from lost contracts.

BPUB filed a general denial and a counter-claim for breach of contract and for attorney's fees, alleging that Coatings first breached the contract. BPUB claimed that it suffered damages in an unspecified amount, including damages for outside engineering consulting fees, demolition costs, liquidated damages for delay, "value of the Contract which was defaulted by Coatings and not performed and ultimately provided no value to BPUB."

On September 14, 2006, BPUB filed a motion to dismiss for lack of subject-matter jurisdiction. It argued that Coatings's claims were barred by sovereign immunity to the extent the claims exceeded amounts offsetting BPUB's counter-claim. Furthermore, BPUB argued that Coatings failed to comply with the pre-suit notice requirements in the City of Brownsville's charter.

Coatings thereafter supplemented its petition to include an inverse condemnation claim under article I, section 17 of the Texas Constitution. *See* TEX. CONST. art. I, § 17.

---

[4] In its appellate brief, BPUB asserts that the contract provided for payment of $449,075 with 210 calendar days to complete the work. It alleges that a total of five change orders were approved, totaling an additional $93,153 and granting an additional 62 calendar days to complete the work. Thus, the total contract amount was $542,228. BPUB asserts that it paid $354,927.65 prior to terminating the contract, with a remaining fund balance of **$187,300.35.**

4

It alleged that BPUB filed an excessive bond claim. Specifically, Coatings contended that BPUB's counterclaim for breach of contract was only for $90,000, while its bond claim was for over $600,0000. Coatings asserted that the bond claim was an intentional act and an attempt to extort money from Coatings or to damage Coatings. BPUB moved to strike the supplemental petition.

On August 13, 2007, the trial court denied BPUB's motion to dismiss for lack of subject-matter jurisdiction. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. STANDARD OF REVIEW

"A plea to the jurisdiction based on sovereign immunity challenges a trial court's jurisdiction." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). Whether the trial court lacks subject-matter jurisdiction is a question of law that we must review de novo. *Id.*; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Initially, we must determine whether the plaintiff's petition pleaded facts that affirmatively demonstrate that jurisdiction exists. *Holland*, 221 S.W.3d at 642. "We construe the pleadings liberally, looking to the pleader's intent. If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead." *Id.* at 643. A trial court may be required to consider evidence if jurisdictional facts are disputed. *Id.* In those circumstances, the trial court should deny the plea if a fact issue is presented as to the court's jurisdiction. *Id.* Otherwise, "if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted." *Id.*

### III. Breach of Contract Claim

First, BPUB argues that under *Tooke v. City of Mexia,* 197 S.W.3d 325 (Tex. 2006) and *Reata Construction Co. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006), it has governmental immunity from suit for Coatings's breach of contract claim, except to the extent of its counterclaim. Specifically, BPUB argued that the contract was entered into before September 1, 2005, when Texas Local Government Code section 271.152 became effective. Act of May 20, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Sess. Law Serv. 1548, 1550 (Vernon) (codified at Tex. Local Gov't Code Ann. § 271.152 (Vernon 2005)). BPUB had previously waived sovereign immunity only to the extent of the counterclaim, thus, BPUB retained immunity for any amount exceeding the counterclaim. Coatings concedes this argument on appeal. Accordingly, we hold that BPUB retains governmental immunity from suit for any award of damages in excess of its counterclaim. We reverse the trial court's order denying BPUB's plea to the jurisdiction as to the breach of contract claim and remand that claim to the trial court, subject to the foregoing limitation.

### IV. Notice Pursuant to City Charter

BPUB next asserts that Coatings failed to satisfy the notice requirements in the Brownsville City Charter and that this failure is a jurisdictional defect. The charter provides:

> The City shall not be liable on account of any claim for specific performance, breach of contract, damages to the person, or to any property, or for any character of tort, unless the person asserting such claim shall give the City written notice of such claim and of the facts upon which it is based within six (6) months from the time it is claimed such cause of action arose, and no such suit shall be instituted or maintained on such claim until the expiration of ninety (90) days from the time such notice shall have been given.
>
> Said written claim shall state the amount of damages claimed and demanded of the city, and [is] to be accompanied by a true statement under oath as to

6

the nature and character and extent of such injury and damages, the time, date and place when and where same happened, the conditions causing the same, with a detailed statement of each item of such damages or injuries, a list of the names and addresses of witnesses, if known to or ascertainable by the affiant, who witnessed said injury or the accident or happening causing the same or the damages resulting from same.

CITY OF BROWNSVILLE CHARTER, art. II, § 8 (Ord. No. 93-1270), *available at* http://www.municode.com/Resources/gateway.asp?pid=10297&sid=43 (last visited Mar. 2, 2009). BPUB asserts that because it is an agent of the city of Brownsville, any claim against it is subject to the notice requirements in the charter, which are administrative prerequisites to suit. Because Coatings did not allege that it provided the requisite notice, BPUB argues that the trial court lacked jurisdiction over the claims.

However, other than quoting the city charter, BPUB provides no authority for the proposition that such a notice provision is a jurisdictional prerequisite to suit. *See City of McAllen v. Zellers*, 216 S.W.3d 913, 916 (Tex. App.–Corpus Christi 2007, no pet.) ("The party asserting that the district court lacks subject-matter jurisdiction over a claim typically within that court's jurisdiction should point us to some *legislative act* that removes jurisdiction from the district court." (emphasis added)). Accordingly, we find that this argument is inadequately briefed and presents nothing for our review. *See* TEX. R. APP. P. 38.1(i).

## V. TAKINGS CLAIM

Finally, BPUB argues that it enjoys governmental immunity from Coatings's alleged takings claim under article I, section 17 of the Texas Constitution. *See* TEX. CONST. art. I,

7

§ 17.[5]   Sovereign immunity does not bar inverse condemnation claims under this constitutional provision.  *Holland*, 221 S.W.3d at 643.  The takings provision in the constitution operates as a waiver of sovereign immunity to the extent that the plaintiff alleges a valid takings claim.  *See Tex. Parks & Wildlife Dep't v. Calloway*, 971 S.W.2d 145, 149 (Tex. App.–Austin 1998, no writ).  "To establish a takings claim under Article I, section 17, the claimant must show that a governmental actor acted intentionally to take or damage property for a public use."  *Holland*, 221 S.W.3d at 643.  Whether a plaintiff has met this burden is a question of law.  *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001)*.*

Coatings asserts that BPUB made an excessive demand on the performance bond, injuring its bonding capacity.  Coatings alleges that when compared to the mere $90,000 it cost BPUB to tear down the water tower, which constitutes the full amount of BPUB's counterclaim, the $600,000 bond claim is so excessive that it is indisputably outside the contract's terms.  Thus, it constitutes a taking of property for public use, and BPUB intended to injure Coatings.

BPUB points to the performance bond in the record, which allows BPUB to demand that Coatings and its surety reimburse and repay BPUB "all outlay and expense which

---

[5] Article I, section 17 of the Texas Constitution provides:

No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof.

Tex. Const. art. I, § 17.

[BPUB] may incur in making good any default."  It asserts that the bond claim was appropriate under this provision.  BPUB argues that where a governmental entity's claimed right to money or property is a matter of contract dispute, the requisite governmental intent to take the property cannot be shown.  Because BPUB's claim on Coatings's performance bond is the subject matter of a contractual dispute, BPUB reasons that Coatings cannot establish the requisite intent to take property without just compensation.   We agree that BPUB lacked the requisite intent for Coatings to establish a takings claim.[6]

In *Holland*, the Texas Supreme Court reiterated the well-established rule that a governmental entity's colorable contract rights may prevent a finding that it had the necessary intent to take property for public use:

> When the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent-domain powers and thus retains its immunity from suit.  This is because the State may "wear [ ] two hats: the State as a party to the contract and the State as sovereign. The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers."

*Id.* at 643 (quoting *Little-Tex Insulation Co.*, 39 S.W.3d at 598-99).  Nevertheless, Coatings argues that the bond claim was "outside the contract" because it was exorbitant.  However, Texas courts have held that even if the governmental entity's interpretation of the contract under which it acts is wrong, if its claim is made under a *color* of a contractual right, the requisite intent is lacking.  *See id.* at 643 ("But absence of an express contract between Holland and the State, or uncertainties about the existence of an implied contract between them, are immaterial to determining the capacity in which the State is acting."); *Tex. S.*

---

[6] BPUB also argues that Coatings failed to establish a definitive property interest and that any taking was for public use.  Because of our disposition, we need not address these arguments.  TEX. R. APP. P. 47.1.

9

*Univ. v. State Street Trust & Bank Co.*, 212 S.W.3d 893, 910-911 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) (holding intent not established where governmental entity acquired property by virtue of contract, even though governmental entity conceded that contract was invalid)*; Green Int'l, Inc. v. State*, 877 S.W.2d 428, 434 (Tex. App.–Austin 1994, writ dism'd) ("*Even if the government were to withhold property or payment it believed to be due the other party*, the government would still be acting within the color of right to the extent it had a good faith belief that its actions were justified due to disagreements over payment due or performance under the contract.") (emphasis added); *see also Brown Water Marine Serv., Inc. v. Aransas County Navigation Dist. No. 1*, No. 13-07-055-CV, 2008 WL 1822727, at *3-4 (Tex. App.–Corpus Christi Apr. 24, 2008, pet. denied) (mem. op.) (holding intent not established when governmental entity dealt with plaintiff in contractual setting, regardless of whether contract was actually formed).[7]

In this case, Coatings voluntarily executed the performance bond to guarantee its performance. In fact, in Coatings' pleadings, it alleged that BPUB breached its contract by making the bond claim in the amount alleged. Having done so, it cannot now claim that the demand for payment from its surety was made pursuant to BPUB's power of eminent domain rather than in its private capacity as party to the contract.[8]  *See Holland*, 221

---

[7] Coatings argues that *Brown Water* is distinguishable because that appeal was from an order granting summary judgment to the navigation district, whereas here, the issue is being raised in a plea to the jurisdiction. *Brown Water Marine Serv., Inc. v. Aransas County Navigation Dist. No. 1*, No. 13-07-055-CV, 2008 WL 1822727, at *3-4 (Tex. App.–Corpus Christi Apr. 24, 2008, pet. denied) (mem. op.). Coatings argues that the question we must answer is whether Coatings pleaded sufficient facts that conceivably could constitute a taking, and it pleaded intent. We agree that the burden of proof is different in these two contexts; however, *Brown Water* is nevertheless instructive.

[8] Coatings cites several cases, none of which require a different holding. Most of the cases cited by Coatings do not involve a contractual setting. *See, e.g., City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex. 2005) (holding city was not liable for flooding plaintiffs' property); *City of Dallas v. Jennings*, 142 S.W.3d 310, 313-14 (Tex. 2004) (holding city was not liable for flooding plaintiffs' home while attempting to unclog sewer

S.W.3d at 664. Although Coatings pleaded that BPUB's bond claim was "an intentional act and an attempt to extort money from the plaintiff," we hold that the pleadings demonstrate that BPUB was acting in its private, contractual capacity in making the bond claim. *See id.* We sustain this part of BPUB's issue, and we reverse the trial court's order denying the plea to the jurisdiction and render judgment dismissing the takings claim for lack of subject-matter jurisdiction.

## VI. Conclusion

Having sustained BPUB's issue in part, we reverse and render, in part, and reverse and remand, in part. Specifically, we reverse the trial court's order denying the plea to the jurisdiction, and we (1) render judgment dismissing the takings claim for lack of jurisdiction, and (2) remand the breach of contract claim for further proceedings consistent with this opinion.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 19th day of March, 2009.

---

line); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980) (holding city could be liable for taking where police officers set fire to plaintiffs' home while attempting to recapture escaped convicts); *County of Burleson v. Gen. Elec. Capitol Corp.*, 831 S.W.2d 54, 60 (Tex. App.–Houston [14th Dist.] 1992, writ denied) (holding sovereign immunity did not bar takings claim based on improper use of taxing authority). The cases cited by Coatings that do involve contractual settings require us to rule in BPUB's favor. *See Tex. S. Univ. v. State Street Trust & Bank Co.*, 212 S.W.3d 893, 910-11 (Tex. App.–Houston [1st Dist.] 2007, pet. denied)*; Green Int'l, Inc. v. State*, 877 S.W.2d 428, 434 (Tex. App.–Austin 1994, writ dism'd).