# NO. 12-18-00206-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DEBRA E. MORRISON,*<br>*APPELLANT* | *§* | *APPEAL FROM THE* |
| *V.* | | |
| | *§* | *COUNTY COURT AT LAW* |
| *PATRICIA J. COLBERT,*<br>*ADMINISTRATRIX OF ESTATE OF*<br>*BOBBIE ALLEN CARTER,*<br>*DECEASED,* | *§* | *ANDERSON COUNTY, TEXAS* |
| *APPELLEE* | | |

---

### *MEMORANDUM OPINION*

Debra E. Morrison appeals the trial court's temporary injunction by which the trial court restricted her access to funds she received after the death of her uncle. In two issues, Morrison contends there is insufficient evidence to support the temporary injunction, and the trial court lacked subject matter jurisdiction. We affirm.

### BACKGROUND

Upon the death of Bobbie Allen Carter, Morrison, his niece, claimed the contents of three Capital One bank accounts totaling almost $300,000. Patricia J. Colbert, as the Administratrix of Carter's estate, sued Morrison to collect the money for the estate. Although Morrison was listed as the payable on death beneficiary for each of the three accounts, Colbert contended that it rightfully belonged in Carter's estate. Colbert contended that Morrison obtained the funds by misrepresentation or deception. Colbert requested both a temporary restraining order and a temporary injunction because the funds converted by Morrison are of a liquid nature and easily dissipated.

The trial court granted Colbert's application for a temporary restraining order and set Colbert's application for a temporary injunction for hearing. Morrison then filed an answer generally denying Colbert's allegations and asserting various affirmative defenses.

At the hearing on Colbert's application for temporary injunction, the trial court heard testimony from both sides. Colbert explained the basis for her claims against Morrison, and her attorney argued that Morrison would expend the funds received from Carter's accounts before the final trial. Morrison presented evidence that she acted properly regarding her treatment of Carter.

After the hearing, the trial court granted the temporary injunction. Specifically, the trial court found that (1) Colbert may prevail at trial, (2) Morrison may spend the funds before the trial court can render judgment, (3) if Morrison spends the funds before judgment is rendered, she would alter the status quo and make a judgment in favor of the estate ineffectual, and (4) unless Morrison is prevented from spending the proceeds of the accounts, the estate will be without an adequate remedy at law. This interlocutory appeal followed.

## JURISDICTION

In her second issue, Morrison argues that the trial court lacked subject matter jurisdiction. Without citing to authority, she argues that a determination of heirship is a prerequisite to the underlying case. She complains that there is no order authorizing Colbert to file a lawsuit against Morrison. We address this issue first because it implicates our own jurisdiction.

### Applicable Law

Subject matter jurisdiction is essential to the authority of a trial court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plea questioning the trial court's jurisdiction raises a question of law that we review de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). The plaintiff has the burden of alleging facts sufficient to demonstrate the trial court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

The County Court at Law of Anderson County is a statutory county court. TEX. GOV'T CODE ANN. § 25.0041 (West 2004). A statutory county court has jurisdiction over all causes and proceedings prescribed by law for county courts. *Id.* § 25.0003(a) (West Supp. 2018). It has, concurrent with the constitutional county court, probate jurisdiction. *Id.* § 25.0003(d); TEX. EST. CODE ANN. § 32.002(b) (West 2014). The County Court at Law of Anderson County also has

2

concurrent jurisdiction with the district courts in probate matters and proceedings. TEX. GOV'T CODE ANN. § 25.0042(a)(1)(A) (West Supp. 2018). A court exercising original probate jurisdiction has jurisdiction of all matters related to the probate proceeding. TEX. EST. CODE ANN. § 32.001(a) (West 2014).

**Analysis**

Morrison correctly states that there has been no judicial determination of heirs to Carter's estate and no ad litem has been appointed. Morrison also asserts that no publication has been posted in the Palestine Herald Press. However, a public notice to creditors of Carter was published in the Frankston Citizen. Finally, Morrison argues that the record is void of any order authorizing Colbert to sue Morrison. Morrison cites no authority showing how her allegations deprive the trial court of subject matter jurisdiction.

Conversely, Colbert claimed that the County Court at Law of Anderson County had jurisdiction over the lawsuit because it was brought incident to the probate of an estate. Colbert asserts that she is authorized to sue Morrison pursuant to her duties as the administratrix of Carter's estate. In March 2018, Colbert filed an application for independent administration and letters of administration. The trial court heard the application and granted Colbert the letters of administration. Colbert also filed an application to approve her attorney's contract, and the trial court approved that application. Finally, Colbert filed an inventory, appraisement, and list of claims in which she specifically listed claims of the estate against Morrison. The trial court approved Colbert's inventory, appraisement, and list of claims. In June 2018, Colbert filed this suit for conversion, requesting an injunction.

The trial court has jurisdiction over the probate of Carter's estate. TEX. GOV'T CODE ANN. §§ 25.0003(d), 25.0042(a)(1)(A). The trial court has jurisdiction over all matters related to the probate proceeding. TEX. EST. CODE ANN. § 32.001(a). Specifically, the trial court has jurisdiction over a claim arising from an estate administration and any action brought on the claim. *Id*. §§ 31.001(5), 31.002(b)(1). Therefore, the trial court has subject matter jurisdiction over Colbert's claims against Morrison. *See id.* § 31.002(b)(1). We overrule Morrison's second issue.

In her first issue, Morrison contends that the trial court abused its discretion by issuing the temporary injunction. She asserts that no evidence was produced at the temporary injunction hearing to support the injunction which froze all of her "money assets."

## Standard of Review

In an interlocutory appeal from a ruling on an application for a temporary injunction, we do not review the merits of the underlying case. *See Davis v. Huey*, 571 S.W.2d 859, 861 (Tex. 1978). A temporary injunction is an extraordinary remedy, the purpose of which is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). In this context, the status quo is the last, actual, peaceable, noncontested status between the parties to the controversy that preceded the pending suit. *See In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004).

We review a trial court's decision to grant a temporary injunction for an abuse of discretion. *Butnaru*, 84 S.W.3d at 204. We must not substitute our judgment for the trial court's judgment unless the trial court's judgment was so arbitrary that it exceeded the bounds of reasonable discretion. *Id*. The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Id*. at 211. More specifically, the trial court does not abuse its discretion when it bases its decision on conflicting evidence, or when some evidence of substantive and probative character exists to support its decision. *Health Care Serv. Corp. v. E. Tex. Med. Ctr.*, 495 S.W.3d 333, 338 (Tex. App.–Tyler 2016, no pet.). An abuse of discretion arises when the trial court misapplies the law to the established facts of the case or when it concludes that the movant has demonstrated a probable injury or a probable right to recovery, and the conclusion is not reasonably supported by the evidence. *Id*. A trial court also abuses its discretion in granting a temporary injunction unless it is clearly established by the facts that the applicant is threatened with an actual irreparable injury if the injunction is not granted. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925 (Tex. App.–Dallas 2006, no pet.).

## Applicable Law

To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. To establish a probable right to the

relief sought, the applicant need not establish that she will prevail on final trial. ***Walling v. Metcalfe***, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam). Instead, the question before the trial court is whether the applicant is entitled to preservation of the status quo until the final trial can be held. ***Id***.

To establish an irreparable injury, the applicant must show that he or she has no adequate remedy at law. ***Cardinal Health Staffing Network, Inc. v. Bowen***, 106 S.W.3d 230, 235 (Tex. App.–Houston [1st Dist.] 2003, no pet.). A legal remedy is adequate if it is as complete, practical, and efficient to the ends of justice and its prompt administration as is equitable relief. *See **Alert Synteks, Inc. v. Jerry Spencer, L.P.***, 151 S.W.3d 246, 254 (Tex. App.–Tyler 2004, no pet.). An injury is irreparable if the injured party cannot be adequately compensated or if the damages cannot be measured by any certain pecuniary standard. ***Butnaru***, 84 S.W.3d at 204. Evidence of fear, apprehension, and possibilities is not sufficient to establish any injury, let alone irreparable injury. *See **Marketshare Telecom***, 198 S.W.3d at 925. When a defendant is unable to pay damages, the plaintiff has no adequate remedy at law. *See **Bankler v. Vale***, 75 S.W.3d 29, 39 (Tex. App.–San Antonio 2001, no pet.); ***Tex. Indus. Gas v. Phoenix Metallurgical Corp.***, 828 S.W.2d 529, 533 (Tex. App.–Houston [1st Dist.] 1992, no writ).

**Analysis**

Conflicting evidence was presented at the hearing on the temporary injunction. Colbert was suspicious of Morrison, and she blamed that suspicion on several factors. Colbert and Carter visited occasionally, but they were not very close. Colbert went to Carter's house after he died and spoke with Morrison. At that meeting, Morrison did not tell Colbert about Carter's assets or about his life insurance policy. Colbert believes that some of Carter's farm equipment is missing. She claims that she saw the farm equipment on the property when she spoke with Morrison shortly after Carter died, but by the time Colbert became administratrix of Carter's estate, the equipment had disappeared. Colbert also noted that some of Carter's housewares had been removed.

Morrison does not know what happened to Carter's farm equipment. She denies having taken any of it. She admits that she gave some of Carter's housewares to family members.

Colbert testified that, either Carter did not know what he was doing, or he was pressured when he signed the forms making Morrison the payable on death beneficiary for each of the Capital One accounts. She also questions whether it is Carter's signature on the forms. Finally, Colbert questions Carter's health and state of mind when he was under Morrison's care and at the time the

5

forms were signed. However, she admitted that she had no facts of what happened the day that Carter supposedly signed the forms. She nevertheless contends that circumstantial evidence raises at least enough of an issue to preserve the status quo.

Carter was dependent on Morrison. It is undisputed that Morrison served as Carter's caretaker toward the end of his life. Morrison moved to Palestine about a year before Carter died. She never lived in the same house as Carter, but she regularly checked on him and made meals for Carter. Morrison took Carter to his medical appointments. Morrison agreed that Carter was in poor health, but she did not know what his medical ailments were. She stated that she did not get into Carter's business regarding his medical condition, but she did believe that at least on one occasion, Carter had not been eating. Morrison knew that Carter had almost $300,000 in the Capital One accounts. She wrote out his checks for him, and Carter signed the checks. Morrison also drove Carter to the bank. Morrison was present when Carter met with Capital One representatives to make her the payable on death beneficiary. However, Morrison denied asking or even suggesting to Carter that he make her the payable on death beneficiary.

After Carter died, Morrison drove to Tyler to obtain the money from the Capital One accounts even though she always had taken Carter to the Palestine branch. Morrison then deposited the funds in a different bank in Tyler. Morrison did not tell her siblings or Carter's other family members that she received almost $300,000 from Carter.

Colbert also contends that Morrison has been living on the funds received from Carter's accounts since shortly after Carter's death. In her appellate brief, Morrison tacitly admits that the money from Carter's accounts would dissipate without the temporary injunction with the following, "The record reflects Morrison quit her job to come to Palestine to care for her family. The trial court froze all her money assets and did not even make provisions for living expenses, utilities, or legal representation." The funds from Carter's accounts remain in a bank in Tyler where Morrison deposited them.

The trial court was well within its discretion to weigh the evidence and determine that Colbert satisfied the requirements for a temporary injunction. *See Butnaru*, 84 S.W.3d at 204. Colbert presented evidence that she possesses a claim against Morrison for the money Morrison obtained from Carter's estate. Without the injunction, Morrison would spend the money. Therefore, the injunction is required to preserve the status quo, and Colbert established a probable right to the relief sought. *See Walling*, 863 S.W.2d at 58. Further, because Morrison would deplete

the funds, Colbert would suffer a probable, imminent, and irreparable injury in the interim without the temporary injunction. *See **Butnaru***, 84 S.W.3d at 204. Thus, Colbert proved the elements necessary to obtain a temporary injunction. ***Id***. We overrule Morrison's first issue.

## DISPOSITION

Having overruled Morrison's first and second issues, we ***affirm*** the trial court's granting of the temporary injunction in which the court limited Morrison's ability to access funds she received from bank accounts held in Carter's name.

**BRIAN HOYLE**
Justice

Opinion delivered February 28, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 28, 2019**

**NO. 12-18-00206-CV**

**DEBRA E. MORRISON,**
Appellant
V.
**PATRICIA J. COLBERT, ADMINISTRATRIX OF
ESTATE OF BOBBIE ALLEN CARTER, DECEASED,**
Appellee

---

Appeal from the County Court at Law

of Anderson County, Texas (Tr.Ct.No. 13255)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order for a temporary injunction.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant **DEBRA E. MORRISON**, for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*