

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00326-CV

———————————————

CITY OF ARLINGTON, Appellant

V.

STACY WESSON-PITTS AND BENARD PITTS, Appellees

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-330806-21

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellees Stacy Wesson-Pitts and Benard Pitts were involved in a car accident with another vehicle near the intersection of Abram Street and Osler Drive in Arlington.[1] Appellees sued Appellant City of Arlington (City), alleging that the City was liable for their damages stemming from the car accident because the City had failed to properly maintain a yield sign near the intersection—a yield sign that had previously been located near the intersection but that was missing at the time of the accident. The City filed a plea to the jurisdiction, arguing that it was immune from Appellees' lawsuit. Following a hearing, the trial court denied the City's plea to the jurisdiction. In one issue on appeal, the City argues that the trial court erred by denying its plea to the jurisdiction because (1) its discretionary decisions as to whether and when to install a yield sign do not waive governmental immunity and (2) it had no obligation to maintain or replace the yield sign because it neither owned nor exercised control over the sign. Because there is a fact issue as to whether the City had exercised control over the yield sign and knew of the dangerous condition posed by the missing yield sign but did not correct it within a reasonable time after notice, we will affirm.

---

[1]The relationship between Wesson-Pitts and Pitts is unclear from the record.

## II. BACKGROUND

### A. The July 7, 2021 Car Accident and Appellees' Lawsuit

As alleged in Appellees' petition, on the evening of July 7, 2021, Pitts was driving a vehicle eastbound on Abram Street while Wesson-Pitts was his passenger. At the same time, Artwavion Brown was also driving a vehicle eastbound on Abram Street. Notably, as Abram Street leads up to Osler Drive, the outside right lane of Abram Street is split from the inside two lanes of Abram Street, with the three lanes coming together just prior to the intersection. Before the collision, the vehicle driven by Pitts was in the split, outside lane of Abram Street, while the vehicle driven by Brown was in the rightmost inside lane of Abram Street. As alleged by Appellees, when the two vehicles approached the intersection and the outside lane came together with the two inside lanes, Brown failed to acknowledge that Appellees' vehicle was to the right of his vehicle, and Brown attempted to turn right onto Osler Drive, turning his vehicle directly in front of Appellees' vehicle, which caused Appellees' vehicle to collide with the side of Brown's vehicle.

In their petition, Appellees maintained that a yield sign had previously been located to the right of the outside lane of Abram Street, just before the intersection with Osler Drive. Appellees alleged, however, that the yield sign became missing "as of March 2021" and that it remained missing at the time of the July 2021 car accident. Appellees further alleged that the City replaced the missing yield sign in December 2021. Appellees contended that the City was liable for their damages stemming from

the car accident under the Texas Tort Claims Act (TTCA) because the City had failed to maintain the yield sign and properly regulate traffic at the intersection and that such failures had created a dangerous situation that resulted in their accident with Brown.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(3), (4), (20), (21), (31).

## B. The City's Plea to the Jurisdiction

The City answered Appellees' lawsuit, and it filed a plea to the jurisdiction. In its plea, the City argued that it was entitled to governmental immunity as to Appellees' claims because it "d[id] not own, did not install and had not exercised any control or maintenance responsibility over the yield sign that was missing at the time of [Appellees'] vehicular accident," contending that the missing yield sign and the property on which the sign was located had been owned and controlled by the Texas Department of Transportation (TxDOT). The City further argued that "[e]ven if the City had the discretionary authority to maintain a sign owned by [TxDOT], the City's governmental immunity is not waived because the City did not exercise that discretionary authority." The City attached three affidavits from City employees—Julius White, Alex Busken, and Justin Simpson—to its plea to support its arguments concerning governmental immunity.

In his affidavit, White, the Operations Manager of the Traffic Operations Division with the City's Public Works Department, stated, in pertinent part,

---

[2]Appellees also sued Brown for damages stemming from the car accident. Brown is not a party to this appeal.

4

The yield sign and the location of the accident are owned and controlled by [TxDOT]. The City of Arlington does not own and did not exercise any control of the property or sign on or before July 7, 2021.

I have no knowledge of any contract between the City of Arlington and [TxDOT] that would allow the City of Arlington to accept, share, or participate in the maintenance or control of the street signs at the location. [Neither] I nor anyone I know at the City of Arlington thought of or treated the location of the accident and its signs as City property before August 11, 2021. The property and yield sign w[ere] always recognized by the City of Arlington as belonging to [TxDOT] and being under the control of [TxDOT].

In his affidavit, Busken, the City Secretary and Records Retention Officer for the City, stated, in pertinent part,

I am the records retention officer for the City[,] and I retain all City ordinances and resolutions. I have researched all City ordinances and resolutions prior to July 7, 2021, and the City of Arlington did not enter into any contract with [TxDOT], or any other governmental entity, that involved the [C]ity accepting, sharing, or participating in the maintenance or control of the 2800 block of East Abram Street at its intersection with 200 Osler Drive, or of any street sign at this location.

In his affidavit, Simpson, the Field Operations Crew Chief of the Traffic Operations Division within the City's Public Works Department,[3] stated, in pertinent part,

I have read the Texas Peace Officer's Crash Report . . . which reports a vehicular accident involving [Appellees] and [Brown], and I am familiar with the yield sign and location of 2800 East Abram Street at the intersection of 200 Osler Drive ("the location"), cited in the report.

---

[3]Simpson stated that he had held the position of Field Operations Crew Chief "since the end of May 2022" and that he "was the Field Operations Crew Leader before that for eleven years." Simpson said that as Crew Leader, he "was responsible for overseeing the installation and maintenance program for [the City's] street signs."

5

In February of 2021, I received an online request that someone had reported to the City that a yield sign at the location was missing. I was the crew leader responsible for responding to that request.

I went to the location and found the pole with the missing yield sign. From my experience, I could tell that the bracket and pole for the sign had been installed by [TxDOT]. Also, when I returned to the office, I looked at Google images of the yield sign at the location and was able to recognize, based on my experience, that the sticker on the back of the yield sign meant that it was not a City of Arlington sign.

Since the yield sign was not a City of Arlington asset, on February 22, 2021, I emailed Ralph Garza at [TxDOT]. Mr. Garza was the City of Arlington's contact at [TxDOT]. A true and correct copy of my email to Mr. Garza is attached to this affidavit and marked as Exhibit A.

The exhibit attached to Simpson's affidavit was a copy of an email that Simpson sent Garza on February 22, 2021. The email stated, "We received a request about a missing Yield sign. It is a TxDOT sign. See pic[.][4] The missing sign is located at Abram/Osler for eastbound traffic."

## C. Appellees' Response to the City's Plea to the Jurisdiction

In their response to the City's plea to the jurisdiction, Appellees argued that the City was liable under the TTCA because the City had exercised control and maintenance responsibility over the yield sign, contending that the City had installed, inspected, and had responsibility for maintenance of the yield sign prior to Appellees' car accident and that the City had failed to reasonably maintain the yield sign despite

---

[4]The email included an attached picture that showed the pole with the missing yield sign.

6

complaints and actual knowledge of a dangerous condition posed by the missing yield sign.

To support their argument that the City had exercised control and maintenance responsibility over the yield sign, Appellees attached an "Asset Summary" page pertaining to the yield sign that was part of the City's records. The "Asset Summary" page indicated that the yield sign had been replaced on January 1, 2000; inspected by Michael McLarry[5] on January 7, 2014, when it was given a rating of "84.00"; inspected by Jimmy Espinoza[6] on July 12, 2021, when it was given a rating of "0.00"; noted as being "knock[ed]-down" on July 16, 2021; and replaced on August 16, 2021.[7] The "Asset Summary" page further reflected that the "cost to date" pertaining to the sign

[5]In their response to the City's plea, Appellees described McLarry as a "City of Arlington employee/contractor." At the hearing on the City's plea, Appellees reiterated that McLarry was a "City of Arlington employee." The City did not refute that McLarry was a City employee. In discussing McLarry's January 2014 inspection of the yield sign in its brief, the City acknowledges that McLarry was its employee, noting that "[t]he fact that a City employee inspected a traffic sign on a public road located with[in] the city limits is not evidence of ownership or the exercise of control."

[6]In their response to the City's plea, Appellees described Espinoza as a "City of Arlington employee/contractor." At the hearing on the City's plea, Appellees reiterated that Espinoza was a "City of Arlington employee." The City did not refute that Espinoza was a City employee.

[7]As to the August 2021 replacement, Appellees also attached to their response a photograph depicting the back of the replaced yield sign. The back of the replaced yield sign contained a sticker labeling it as a City sign.

was $68.70, and the page also indicated that the "custodian" of the sign was the "State."

Appellees also attached to their response a subpoena they issued on TxDOT as part of the litigation, requiring TxDOT to produce "all records . . . regarding the yield sign at the intersection of 2800 East Abra[m] Street and 200 Osler Drive . . . including, but not limited to, correspondence between TxDOT and the City of Arlington regarding responsibility, ownership, and maintenance of said yield sign." Appellees also attached to their response TxDOT's letter response to the subpoena, in which TxDOT's Open Records Coordinator stated, "Enclosed is [a] subpoena submitted for records regarding the yield sign at the intersection of 2800 East Abra[m] and 200 Osler Drive in Arlington. These streets are city streets and not TxDOT['s], therefore TxDOT has no records for the yield sign." Appellees further attached a business-record affidavit from TxDOT's Open Records Coordinator, who stated in the affidavit that zero pages were attached to the affidavit, noting that "[t]he location is not TxDOT['s]."

To support their argument that the City had actual knowledge of the missing yield sign and yet did nothing about it until after their car accident, Appellees attached to their response a Google screenshot showing that the yield sign was present at the intersection in December 2020 and another Google screenshot showing that the yield sign was missing in March 2021. Appellees also attached a "Request Detail" page from the City's records pertaining to a request the City received from an anonymous

8

requester pertaining to the missing sign on February 22, 2021. The "Request Detail" page notes that the issue reported was "Street Sign Down or Missing" at 2760 East Abram Street. The description of the request is as follows:

> MISSING YIELD SIGN . . . I called nonemergency 911 3 weeks ago with police confirmation & call log, before the artic weather and im seeing other signs just knocked down from the storm in other places being repaired faster, something is wrong here. It is very dangerous driving from under 360 trying to turn onto Osler without the yield sign and cars zooming up the side[.] . . . Do i take it to the news next?

The "Request Detail" page states that the request was "[s]ent to Crew leader for resolution" on February 22, 2021. The page also reflects that Simpson, the Crew Leader at the time, exchanged further comments with the requester on February 22, 2021. Simpson commented, "Upon inspection, we found that this issue affects an asset that is owned by TxDOT and have forwarded your request. If you would like to check the status, please contact the Tarrant County TxDOT office." The requester then commented, "Very poor[.] It[']s not a road con[]struction sign[,] it[']s not a highway sign[,] it[']s not a temporary, it[']s a city yield sign concreted down on a permanent pol[e] that[']s missing." Simpson responded, "This is not a COA sign. It belongs to [TxDOT]. I have E-Mailed my contact at TxDOT to make them aware of the missing sign."

## D. The Trial Court's Ruling on the City's Plea to the Jurisdiction

The City's plea to the jurisdiction was later set for a hearing. At the conclusion of the hearing, the trial court indicated that there was a fact issue on whether the City

9

owned or controlled the yield sign, and it denied the City's plea to the jurisdiction. The trial court later signed an order denying the City's plea. This interlocutory appeal followed.

## III. DISCUSSION

In one issue, the City argues that the trial court erred by denying its plea to the jurisdiction. The City contends that it is entitled to governmental immunity as to Appellees' claims because it neither owned the sign nor exercised control over the sign and therefore had no obligation to maintain or replace it.[8] In response, Appellees contend that the evidence proves, or at the very least creates a substantial fact issue regarding, the City's control and maintenance responsibility over the missing yield sign and that the City knew of the dangerous condition posed by the missing sign but did not correct it within a reasonable time after notice.

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A plea to the jurisdiction may be utilized to challenge whether a plaintiff has met its burden of alleging jurisdictional facts or to challenge the existence of jurisdictional

---

[8]The City also argues that its discretionary decisions as to whether and when to install the yield sign do not waive governmental immunity. But Appellees do not seem to dispute any discretionary decisions made by the City with respect to the initial decision to install the yield sign. Rather, Appellees focus on the decisions made by the City once it had knowledge that the sign was missing and on whether the City exercised control and maintenance responsibility over the sign.

10

facts. *See Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

In deciding a plea to the jurisdiction, a court may not weigh the merits of a plaintiff's case but must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000). When considering a trial court's ruling on a plea to the jurisdiction, we construe the pleadings liberally in the plaintiff's favor, taking all factual assertions as true, and look to the plaintiff's intent. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227–28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* This standard mirrors our review of summary judgments; thus, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009).

## B. Applicable Law

Sovereign immunity deprives a trial court of jurisdiction for lawsuits in which the State has been sued unless the State consents to the suit. *Miranda*, 133 S.W.3d at

11

224. Political subdivisions of the State, including cities, are entitled to such immunity—referred to as "governmental immunity"—unless it has been waived. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

Under the TTCA, the Legislature has provided a limited waiver of governmental immunity from suit for certain tort claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.025. The TTCA waives governmental immunity for personal injury or death caused by a condition or use of tangible personal or real property under circumstances in which a private person similarly situated would be liable. *Id.* § 101.021(a). Section 101.0215(a), one of the sections Appellees rely on for their argument that the City has waived its governmental immunity from suit, provides that a municipality is liable under the TTCA for damages arising from its governmental functions, including its regulation of traffic and the maintenance of traffic signs. *Id.* § 101.0215(a)(21), (31). Section 101.060(a)(2), another section Appellees rely on for their argument that the City has waived its governmental immunity, limits that waiver, retaining immunity for claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice."[9] *Id.* § 101.060(a)(2).

---

[9]Section 101.060(a)(1) provides another limitation on a governmental unit's waiver of immunity, retaining immunity for claims arising from "the failure of a

12

## C. Analysis

In their briefs, both the City and Appellees cite our prior decision in *City of Wichita Falls v. Romm*, No. 2-09-237-CV, 2010 WL 598678 (Tex. App.—Fort Worth Feb. 18, 2010, no pet.) (mem. op.). In *Romm*, a motorcycle driver was leaving a highway exit ramp and entering an eastbound street when another vehicle suddenly merged into the motorcycle's lane, striking the motorcycle. *Id.* at *1. According to the motorcycle driver, the City of Wichita Falls failed to maintain a road sign directing the lanes of travel for the highway exit ramp, with the motorcycle driver's petition noting that the subject sign was "turned in the wrong direction." *Id.* After it was sued, the City of Wichita Falls filed a plea to the jurisdiction asserting governmental immunity. *Id.*

The City of Wichita Falls included in its jurisdictional evidence an affidavit from the Traffic Superintendent for the city, who averred that the street sign and highway exit ramp cited in the motorcycle driver's petition were owned and controlled by TxDOT. *Id.* at *3. The Traffic Superintendent further stated that he had no knowledge of any contract between the city and TxDOT that would allow the city to

---

governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit." *Id.* § 101.060(a)(1); *see also id.* § 101.056 (concerning application of TTCA to discretionary powers of governmental units). But, again, Appellees do not seem to dispute any discretionary decisions made by the City with respect to the initial decision to install the yield sign but instead focus on the City's decisions once it had knowledge that the sign was missing.

13

accept, share, or participate in the maintenance or control of the subject street sign and that the subject property had always been recognized by the city as belonging to TxDOT and being under the control of TxDOT. *Id.* The city also included in its jurisdictional evidence an affidavit from its City Clerk, who stated that she was the records retention officer for the city, that she had researched all of the city's ordinances and resolutions prior to the date of the motorcycle crash, and that the city had not entered into any contract with TxDOT, or any other governmental entity, that involved the city's accepting, sharing, or participating in the maintenance or control of the subject street sign or exit ramp. *Id.* at *4. Notably, the motorcycle driver "did not submit any jurisdictional evidence in response to the [c]ity's plea," and the driver "acknowledged at the hearing that she had no proof to support her allegation." *Id.* Nevertheless, the trial court denied the city's plea to the jurisdiction. *Id.* at *1.

On appeal, we reversed the trial court's denial. *Id.* at *4. We noted that the motorcycle driver "put forth no evidence raising a fact question in regard to the [c]ity's jurisdictional evidence that it exercised or assumed no control over the sign or exit ramp." *Id.* Accordingly, because the only jurisdictional evidence before the trial court demonstrated that the city did not have control over the sign or exit ramp, we held that the motorcycle driver had failed to assert a claim sufficient to invoke a waiver of the city's governmental immunity under the TTCA. *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(a), .060(a)(2)).

14

Appellees argue that *Romm* is distinguishable because the plaintiff there offered no evidence to controvert the affidavits submitted by the City of Wichita Falls regarding the ownership and control of the subject sign and exit ramp, while here, Appellees did offer evidence to controvert the City's claims regarding the ownership and control of the missing yield sign and property. We agree.[10]

Here, Appellees presented an "Asset Summary" page pertaining to the yield sign that was part of the City's records. That page indicated that the yield sign had been installed on January 1, 2000, and that it had been inspected and rated by a City employee in January 2014 and on behalf of the City in July 2021. Moreover, while the affidavits attached to the City's plea to the jurisdiction maintained that the City did not own or control the missing yield sign or the location of the accident, TxDOT's response to Appellees' subpoena paints a different picture. TxDOT's Open Records Coordinator stated in his responsive letter that, regarding the subject yield sign at the intersection of Abram Street and Osler Drive, "[t]hese streets are city streets and not

---

[10]In its reply brief, the City argues that Appellees have "mistakenly emphasize[d] an immaterial difference between . . . *Romm* and the case at bar," arguing that while the plaintiff in *Romm* had failed to provide any evidence in response to the City of Wichita Falls's plea to the jurisdiction, here, Appellees "failed to provide any *relevant* evidence in response to the [City's] plea to the jurisdiction." We disagree with the City's characterization of the evidence provided by Appellees. Evidence that the City had in its possession concerning the inspection of the yield sign by at least one City employee—in a record labeled an "Asset Summary," no less—along with other records indicating that TxDOT considered the location of the accident to be "city streets and not TxDOT['s]," coupled with another record indicating that someone had complained almost five months prior to the accident about the dangers presented by the missing yield sign, are relevant to the City's plea to the jurisdiction.

15

TxDOT['s], therefore TxDOT has no records for the yield sign."  In a business-records affidavit providing zero pages in response to Appellees' subpoena, TxDOT's Open Records Coordinator reiterated that "[t]he location is not TxDOT['s]."  Taking as true all evidence favorable to the nonmovants and indulging every reasonable inference and resolving any doubts in their favor, we hold that this evidence presents a fact issue on whether the City exercised control and maintenance responsibility over the missing yield sign.  *See Heinrich*, 284 S.W.3d at 378.

Here, Appellees also presented evidence that the City failed to reasonably maintain the yield sign despite complaints and actual knowledge that it presented a dangerous condition.  Appellees presented Google screenshots showing that the yield sign was present at the intersection in December 2020 but was missing in March 2021.  Moreover, Appellees attached a "Request Detail" page from the City's records indicating that an anonymous person had complained about the missing yield sign and the dangers it presented on February 22, 2021—almost five months before the accident.  That person noted that "[i]t is very dangerous driving from under 360 trying to turn onto Osler without the yield sign and cars zooming up the side."  Despite that warning, the City did not replace the yield sign until after Appellees' July 2021 accident.  Taking as true all evidence favorable to the nonmovants and indulging every reasonable inference and resolving any doubts in their favor, we hold that this evidence presents a fact issue on whether the City is liable to Appellees under the

16

TTCA and therefore immune from suit. *See Heinrich*, 284 S.W.3d at 378; *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(a), .0215(a)(21), (31), .060(a)(2).

Because a fact issue exists regarding whether the City is liable to Appellees under the TTCA and therefore immune from suit, we overrule the City's sole issue.

## IV. Conclusion

Having overruled the City's sole issue, we affirm the trial court's denial of the City's plea to the jurisdiction.

/s/ Dana Womack

Dana Womack
Justice

Delivered: January 26, 2023

17