# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00598-CV

**Thomas G. Kilgore, Appellant**

**v.**

**City of Lakeway, Texas, and Sandy Cox, Ron Massa, Bridge Bertram, Dwight Haley, Steve Smith, and Keith Trecker, in their Official Capacities, Appellees**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-004411, THE HONORABLE TIM SULAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Thomas G. Kilgore sued appellees City of Lakeway, Texas; Sandy Cox, in her official capacity as Mayor; and Ron Massa, Bridge Bertram, Dwight Haley, Steve Smith, and Keith Trecker, in their official capacities as members of the Lakeway City Council. He sought declaratory and injunctive relief, asserting that appellees had through ordinances changed the way council members were elected, thus "effectively amending" the City's home-rule charter without voter approval. Appellees responded with a plea to the jurisdiction, which the trial court granted, dismissing Kilgore's claims. This appeal presents the limited question of whether Kilgore lacked standing to bring his suit. As explained below, we will affirm the trial court's order granting appellees' plea to the jurisdiction.

## STANDARD OF REVIEW

"Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001). "As a general rule of Texas law, to have standing, unless it is conferred by statute, a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001). A plea to the jurisdiction questioning a trial court's jurisdiction raises a question of law that we review de novo, asking whether the plaintiff alleged sufficient facts to affirmatively demonstrate jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). We construe the pleadings liberally, looking to the plaintiff's intent, and even if the factual allegations are insufficient to establish jurisdiction, if they do not affirmatively demonstrate an incurable defect, the plaintiff should be allowed to replead. *Id*. at 643. In some instances, a trial court may have to consider evidence before ruling on a plea to the jurisdiction. *Id*. If there is a fact issue as to jurisdiction, the plea should be denied, but if the relevant undisputed evidence negates jurisdiction, the plea must be granted. *Id*.

## FACTUAL BACKGROUND

The Texas Constitution provides that cities of the size of the City of Lakeway "may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters." Tex. Const. art. XI, § 5(a). The local government code similarly provides that the governing body of such a city, known as a "home-rule municipality," "may submit a proposed charter amendment to the municipality's qualified voters for their approval at an election" and that a proposed change to a charter "is adopted if it is approved by a majority of

the qualified voters of the municipality who vote at an election held for that purpose." Tex. Loc. Gov't Code §§ 9.004(a), .005(a); *see id*. § 5.004 ("A municipality is a home-rule municipality if it operates under a municipal charter that has been adopted or amended as authorized by Article XI, Section 5, of the Texas Constitution.").

The City's home-rule charter was approved by the citizens in 1990 and established a six-person city council with council members running for two-year terms under a plurality-vote, at-large election system. In 2014, voters approved an amendment to the City's charter that extended the mayoral and city council terms from two to three years but did not make any changes to the voting system. Unbeknownst to the City at the time, that change was in violation of the Texas Constitution, which provides that a home-rule city may allow its council terms to exceed two years, but only if the council members are elected by majority vote. Tex. Const. art. XI, § 11(a).

In 2018, the City learned of the problem with its amended charter and contacted the Secretary of State for advice. The Secretary of State's office responded, recommending that the City pass an ordinance postponing implementation of the three-year terms until the at-large system could be replaced with a place system, necessary to facilitate a majority-vote system. The Secretary of State also provided advice on how to manage elections and council member positions from the 2018 election forward, recommending that an ordinance be passed to assign place numbers to the council members. Once place numbers were assigned, the Secretary advised, the charter amendment could be implemented and council members (and the mayor) could be "elected by majority to three year terms."

The City passed an ordinance in April 2018 that (1) suspended the charter amendment until the City either established a place system or amended the charter again and

3

(2) provided that the May 2018 election would be conducted under the plurality system. In May 2018, the City passed another ordinance observing that it had just conducted an election for the City's mayor and two council seats and stating that its purpose was to "realign the terms for the mayoral and council seats." Under the May ordinance, the mayor was declared to be serving as a holdover since 2017, two council members would serve as holdovers until their seats were filled by a special election in November 2018, two council members were realigned from three- to two-year terms ending in May 2019, and two terms did not require realignment. The ordinance also provided that: the mayoral candidate who received the highest number of votes in the just-held election would serve as mayor through the end of a two-year term ending in May 2019; the council candidate receiving the highest number of votes would serve a full two-year term; and the council candidate receiving the next highest number of votes would serve the remainder of a two-year term ending in May 2019. Finally, the ordinance provided that the two council candidates receiving the highest number of votes in the November 2018 special election would serve two-year terms ending in May 2020 and that an election in May 2019 would elect the mayor and three council members for two-year terms. In July 2018, the City passed an ordinance ordering a special election in November 2018 to elect two council members. The City never implemented a place system for its council, as recommended by the Secretary of State.

Kilgore sued to enjoin the November 2018 election, and appellees filed a plea to the jurisdiction asserting in relevant part that Kilgore lacked standing to bring his suit. Kilgore testified before the trial court that he and his wife moved to Lakeway from Boston in 2016 and that in deciding where to live, they took into account the kind of house they could buy, how they could be involved in the community, and "the way the community was run and managed." He said that he reviewed the City's charter before deciding to move to Lakeway and liked the

4

structure, partly because the City "ran its government much like the City of Boston currently [does] with the mayor and city council. And it was a very familiar system in the way elections would be continued." He said that one of the things he considered "was the form of government, how many council members there would be, that there was a mayor and that how they were elected and the terms." Asked how the ordinances' postponement of the charter amendment had affected him, Kilgore answered:

> The city has personally stripped me of my right to vote for charter amendments. The city has done that in violation of the constitution by overturning a prior charter amendment without putting anything to a vote of the citizens. The city has a charter the words of which do not prevent majority voting. The city has a charter which does not prevent the establishment of place. The city has a charter which allows the city to conduct an election, particularly a special election, and have majority voting for that place without any change. This—this action I'm taking is an opportunity for the city to return to a constitutional path at a very low cost.

He also said that his voting would change based on whether the election was a plurality or majority vote because:

> if you're trying to pick from a scrum, that's different than trying to pick the best candidate for a position. And in picking by a plurality type system, you end up seating votes in control [sic] to small minorities that try to push one particular line across, which may or may not represent the community at large. And I find that offensive to my vote.

The trial court signed an order granting the plea to the jurisdiction and dismissing Kilgore's claims, which Kilgore now appeals.

## DISCUSSION

Kilgore filed his petition seeking to enjoin the November 2018 election, arguing that the 2018 ordinances suspending the 2014 charter amendments "were not presented to the qualified voters, such as Mr. Kilgore, for approval as required by the Texas Constitution." He asserted that the ordinances amounted to a "de facto amendment" of the charter that should have been approved by the voters. Kilgore sought a declaration that appellees had violated the Texas Constitution and the local government code by refusing to present the "de facto amendment" to the voters, had violated the election code by calling a special election to elect council members, and had violated Kilgore's rights by "negating his right to vote for all positions on his city council." He sought to enjoin the November 2018 special election, which was to be held under the plurality voting system, and asked the trial court instead to order that the November election be conducted using majority voting; that only a vacant council seat be filled, for a three-year term, by the November election; and that the non-vacant seat be filled by a later election, conducted "on a place basis using majority voting."

In their plea to the jurisdiction, appellees argued in relevant part that Kilgore lacked standing because he had not suffered any injury distinct from the public at large. *See Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001). Kilgore responded that he had "lost his individual right to vote in multiple ways," including his right to vote for a charter amendment, his right to vote for individual council seats by majority vote, and his right to vote for non-vacant council seats in a general election. He argued that he was contesting the form of the election, not the results, and that the election code expressly allowed citizens to seek injunctive relief to avoid being harmed by violations of the election code. He also claimed that because he presented his objections to the City before the July ordinance was passed, he had suffered an injury distinct

6

from other voters in the area. Kilgore argued that the trial court had jurisdiction to enjoin the special election, which he argues was in violation of the election code, and that his requested injunction would "be easy to implement within the timeframe available."

Although the parties limit themselves to discussing Kilgore's standing, we must note that the lawsuit complained in large part about the City's calling of the November 2018 special election, but that any issues or complaints specific to that election are now moot. *See, e.g.*, *Pressley v. Casar*, 567 S.W.3d 327, 331-32 (Tex. 2019); *Perez v. Turner*, No. 01-16-00985-CV, 2019 WL 5243107, at *5 (Tex. App.—Houston [1st Dist.] Oct. 17, 2019, no pet. h.). However, Kilgore's broader complaints about the ordinances' postponement of the charter amendment are not moot because those complaints—that under the ordinances, the elections are for council seats that carry two-year terms and are conducted under an at-large, plurality voting system—are ongoing and continue with each subsequent city council election. We are confronted, therefore, with the limited question of whether Kilgore has shown that he has standing to complain about appellees' actions, which have effectively undone the charter amendment that provided for three-year city council terms.

Initially, we observe that the attempted change to the City's charter was in conflict with the Texas Constitution. No one argues that allowing for three-year terms without changing the at-large, plurality voting system would comport with the Texas Constitution. Instead, Kilgore argues that, post-amendment, any charter provisions that conflict with the Texas Constitution "must yield," meaning that by approving the three-year terms, the voters impliedly agreed to change how votes are conducted and to switch to a majority place system.[1] The

---

[1] As support for that argument, Kilgore refers to *Estrada v. Adame*, in which the city charter provided for three-year council terms, which, under the Texas Constitution, required

7

charter, however, does not indicate such changes were contemplated and instead both provides for three-year terms and specifies that the mayor and council members "will be elected from the City at large." It further provides that after an election is held, the "candidate who receives the largest number of votes cast for an office shall be declared elected" and that a run-off election shall be held if "no candidate for an office receives a plurality of the votes cast for that office."

We agree that a charter provision that conflicts with the Texas Constitution or the election code must yield, *see* Tex. Const. art. XI, § 5 ("no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"); *City of Wink v. Griffith Amusement Co.*, 100 S.W.2d 695, 698 (Tex. 1936) ("The rule is definitely established . . . that ordinances in conflict with the general or state law are void."); *City of Cleveland v. Keep Cleveland Safe*, 500 S.W.3d 438, 448 (Tex. App.—Beaumont 2016, no pet.) (city charter "cannot be inconsistent with the Constitution of the State and general laws of the State"), but that means that the charter amendment that Kilgore insists should be implemented was instead void and of no legal effect to the extent that it conflicted with the Texas Constitution and the general laws, *see* Tex. Att'y Gen. Op. GA-0433 (2006) (asked about effect of charter amendment that conflicted with constitution, attorney general answered that "[m]unicipal laws inconsistent with state law are void ab initio"

---

election by majority vote. 951 S.W.2d 165, 166-167 (Tex. App.—Corpus Christi-Edinburg 1997, orig. proceeding). After an election in which there was no majority winner and Estrada came in second place, the mayor failed to order a runoff and the plurality winner was sworn into office. *Id*. at 167. The court of appeals granted mandamus relief, holding that the mayor violated her duty to order a runoff election. *Id*. at 167-68. However, as appellees note, in that case, the city attempted to have both three-year terms under a place system and a plurality voting system, and *Estrada* did not involve the question of a voter's standing and thus is not relevant to the question before us.

and that despite amendment attempt, "the City's charter was not amended" and "continues to mandate commissioners' term limits as it did prior to the invalid 1995 amendment").

We now consider whether Kilgore had standing to complain of the City's actions in passing the ordinances that postponed the charter amendment. A citizen generally "lacks standing to bring a lawsuit challenging the lawfulness of governmental acts" because "governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review." *Andrade v. Venable*, 372 S.W.3d 134, 136 (Tex. 2012). "No Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts. Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large." *Brown*, 53 S.W.3d at 302; *see Venable*, 372 S.W.3d at 137 (citizen complaining of governmental action generally "must show that he has suffered a particularized injury distinct from the general public"). Relying heavily on *Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011), Kilgore asserts that the ordinances operate to "dilute or outright deny his individual right to vote" for all charter amendments and for individual council positions by majority votes.[2] He further notes that he opposed the ordinances before their passage and that he testified before the trial court that part of the reason he moved to the City was the electoral system as described in the charter. Thus, he argues, he established standing to bring this challenge complaining of the election process. *See id*. at 8.

---

[2] Kilgore also asserts that by setting two council seats for the special election in November 2018, he was stripped of his right to vote for certain council positions during general elections that are supposed to occur in May. However, that complaint is specific to elections that occurred in November 2018 and May 2019 and thus is moot.

9

In *NAACP*, the plaintiffs were voters complaining of being required to use a certain electronic voting machine that did not provide a paper record of each vote. *Id*. at 5-6, 10-11. The supreme court discussed standing and the particularized-harm requirement, noting that harm is not based on "the number of people affected" and that a plaintiff can have standing even when "a harm is concrete, though widely shared." *Id*. at 7-8 (cleaned up). In determining whether a plaintiff has standing, "the proper inquiry is whether the plaintiffs sue solely as citizens who insist that the government follow the law." *Id*. "The line between a generalized grievance and a particularized harm is difficult to draw," however, and the court observed that it had been "careful to suggest that challenges to the election process may be different" from the usual standing analysis. *Id*. at 8.

The supreme court concluded that the plaintiffs had standing to bring their equal-protection claims because in raising concerns about whether their votes would be properly counted, "they assert a plain, direct and adequate interest in maintaining the effectiveness of their votes, not merely a claim of the right, possessed by every citizen, to require that the Government be administered according to law." *Id*. at 11 (cleaned up). The court also explained that because the plaintiffs were required to use the machines while other voters in the county or in other parts of the state were not, "this disparity gives them standing to sue for an equal protection violation." *Id*. at 12. The court went on to explain, however, that although the plaintiffs had standing to assert their equal-protection claims, they did not have standing to bring claims asserting violations of the Texas Constitution or the election code. *Id*. at 14-18. As to those claims, the court concluded that the plaintiffs had not asserted a "concrete, particularized harm" and instead raised "only generalized grievances about the lawfulness of government acts." *Id*. at 15, 18.

10

Kilgore is complaining about City ordinances that postponed the implementation of the charter amendment—an amendment that brought the charter into conflict with the Texas Constitution. Although the ordinances affect the City's election process, the supreme court's holdings in *NAACP* do not mean that Kilgore can establish standing to bring his constitutional and elections-code claims simply by asserting that his vote was diluted. To the contrary, Kilgore's vote will be counted in the same way as every other resident of the City, and his vote has a weight or effect identical to votes cast by any other citizen in the City.[3] The fact that he wants a different system does not change the fact that he is raising only a generalized grievance about the ordinances and has not suffered a concrete, particularized harm.[4] *See id*.; *Hotze v.*

---

[3] In *Engelman Irrigation District v. Shields*, the court of appeals determined that the plaintiffs had "established injuries distinct from voters at large" because one was a candidate up for election and both had filed proxy designation forms that were canceled by the defendant's board of directors. No. 13-08-00153-CV, 2008 WL 1974344, at *7 (Tex. App.—Corpus Christi-Edinburg May 8, 2008, no pet.) (mem. op.). Kilgore has not asserted an injury that is in any way distinct from the ordinances' effects on every other voter in the area and thus has not asserted an injury distinct from the voters at large.

[4] Although Kilgore also asserts that the ordinance diluted his vote, the cases to which he cites for support involve the effect on minority votes of at-large voting schemes, which "have been held to impair minority voting rights." *See Lopez v. Abbott*, No. 2:16-CV-303, 2017 WL 1209846, at *2 (S.D. Tex. Apr. 3, 2017). However, Kilgore has not alleged that he is a minority or a member of a class that has suffered past discrimination or vote suppression. *See id*.; *see also League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 837 (5th Cir. 1993) (discussing history of dilution of minority votes). And although Kilgore notes that "at-large voting schemes have been held to impair voting rights in cases where voter dilution or suppression is a concern," there is no indication that voter suppression or the dilution of minority voting rights is a concern here.

Nor has Kilgore been denied his "individual right to vote" as was the complaining voter in *League of United Latin American Citizens, District 19 v. City of Boerne*, 659 F.3d 421, 430 (5th Cir. 2011). In that case, a consent decree—entered due to a history of dilution of the voting strength of Mexican-American voters—established a single-member electoral district system rather than an at-large, numbered-post system as set out in the city's charter, meaning that the voter was "only able to vote for the one council member in whose single-member district he resides." *Id*. at 427-28. Thus, the voter had standing because he was "deprived of his pre-

*White*, No. 01-08-00016-CV, 2010 WL 1493115, at *6-7 (Tex. App.—Houston [1st Dist.] Apr. 15, 2010, pet. denied) (mem. op.) (voter who actively opposed proposition had "particular interest in ensuring that" proposition was submitted in "properly worded ballot" but did not have standing to challenge results of election; opposition to current proposition and sponsorship of earlier proposition did not inflict distinct injury on voter, who instead "is now essentially equal to all other persons who voted for" earlier proposition and opposed recent proposition). Further, the amendment itself is void, as we have explained, and it would be contrary to the charter's provisions that specifically relate to the election process if the City were to conduct its elections under a majority place system.

Kilgore is not raising an equal-protection claim, as did the plaintiffs in *NAACP*. Nor has he raised any complaint that his vote, whether alone or with a group of other similarly situated voters, will be treated differently than any other votes cast in City elections. Kilgore's challenge, at heart, is "merely a claim of the right, possessed by every citizen, to require that the Government be administered according to law." *NAACP*, 345 S.W.3d at 10 (cleaned up). And although Kilgore insists that the City had suspended a "valid charter amendment," we cannot ignore the fact that the charter amendment brought the City's charter into conflict with the Texas Constitution and that Kilgore's challenge would require the City to violate either the Texas Constitution, if it continued with three-year terms under its current voting system, or provisions of its charter by employing a voting system that varies from the terms provided in the charter.

---

existing right to vote for all the members of the city council which has jurisdiction over the city where he lives." *Id*. at 429-30.

12

We overrule Kilgore's arguments on appeal. We hold that Kilgore did not show any particularized harm resulting from the City's adoption of its ordinances correcting the constitutional problem caused by the charter amendment.

## CONCLUSION

Kilgore did not establish that he had standing to bring this lawsuit. Further, because the facts establish that Kilgore has not been affected differently than any other voter in the City, "the relevant undisputed evidence negates" Kilgore's standing to bring suit and we need not allow an opportunity to replead. *See Holland*, 221 S.W.3d at 642-43. We affirm the trial court's order granting appellees' plea to the jurisdiction and dismissing Kilgore's claims.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Triana and Kelly

Affirmed

Filed:   February 26, 2020

13