**Affirmed and Memorandum Opinion filed February 12, 2026.**



In The

# Fifteenth Court of Appeals

### NO. 15-25-00058-CV

## THE BOARD OF REGENTS OF THE TEXAS A&M UNIVERSITY SYSTEM, Appellant

### V.

## BE&K BUILDING GROUP, LLC, Appellee

### On Appeal from the District Court
### Brazos County, Texas
### Trial Court Cause No. 20-002171-CV-272

## MEMORANDUM OPINION

The Board of Regents of Texas A&M University System ("TAMU") appeals the trial court's denial of its plea to the jurisdiction asserting sovereign immunity. TAMU filed its plea in response to BE&K Building Group, LLC's ("BE&K") petition seeking damages for an alleged breach of a construction contract. Because the breach of contract claim falls within the sovereign immunity waiver for state agencies under Texas Civil Practice and Remedies Code Section 114.003, we affirm.

BACKGROUND

In August 2016, TAMU hired BE&K to construct the Applied Sciences Engineering Building on TAMU's Tarleton State University campus. The parties entered into a Construction Manager-At-Risk Agreement (the "Agreement"), setting the project's maximum price at approximately $40.5 million (later increased to approximately $41.5 million) and a target substantial completion date of September 29, 2018 (later extended to October 4, 2018).

The Agreement outlines the scope of work, the process for altering the project's terms, and the requirements for settling disputes. It is comprised of three components: (1) the Uniform General Conditions; (2) the Uniform Supplementary Conditions; and (3) the special conditions. The parties refer to the Uniform General & Supplemental Conditions together as "the UGSC."

Relevant here, UGSC Article 9.6.2.2 states that BE&K is "entitled to an equitable adjustment of time" for certain delays to the project schedule, including delays due to TAMU's errors and omissions or changes to work that is critical to completion. UGSC Article 11.3.1 allows BE&K to recover additional costs incurred during the project. UGSC Article 10.3 governs TAMU's duty to pay, along with documentation requirements, and requires TAMU to reduce or release portions that it had retained from progress payments—termed "retainage"—once 65% of the Agreement had been completed. UGSC Article 12 governs the requirements for TAMU to make final payment. The Agreement also includes a dispute resolution provision which incorporates the requirements of Chapter 2260 of the Texas Government Code and requires BE&K to submit written notice of a claim of breach of contract to TAMU prior to filing suit.

BE&K began construction in April 2017. BE&K asserts that TAMU delayed the project by making a number of changes to the scope, including storm system and

roof system redesigns and the addition of a utility-support grid. To accommodate these changes, BE&K made several time extension requests which TAMU denied. BE&K claims that it achieved 65% completion of the Project and substantial completion in 2019, well after the agreed upon substantial completion date. TAMU refused to release retainage or compensate BE&K for its work.

BE&K sued TAMU under Chapter 114 of the Texas Civil Practice and Remedies Code, alleging that TAMU breached the Agreement by failing to equitably extend the substantial completion date and improperly withholding final payment and retainage. BE&K identified UGSC Articles 9.6, 10.3, and 11.3 as specific Agreement provisions it claims TAMU breached. BE&K stated that the balanced owed to it under the Agreement totaled more than $3.5 million.

In response to BE&K's petition, TAMU filed a plea to the jurisdiction, arguing that BE&K's suit under the Chapter 114 limited waiver provision was improper. TAMU asserted that (1) BE&K did not allege a breach of an express provision of the Agreement which required TAMU to pay, (2) BE&K's failure to comply with the conditions precedent which would obligate TAMU to pay meant that no jurisdictional facts existed to establish waiver, and (3) BE&K did not comply with the notice and alternative dispute requirements before filing suit. TAMU attached to its plea a copy of the Agreement and an affidavit signed by Brett McCully, Director at the Office of Facilities Planning & Construction for The Texas A&M University System. In his affidavit, McCully stated that TAMU had not received the required documentation for final payment, written consent of the surety for a request of release of retainage, or any documents required to approve change orders or time extension requests. Also attached was a claim letter from McCully to Steven Olson, BE&K's Chief Operating Officer, addressing BE&K's alleged failure to comply with the contractual requirements which would obligate TAMU to grant

time extensions.

BE&K responded to the plea, arguing that the only jurisdictional fact required for Chapter 114's immunity waiver was BE&K's claim for breach of an express contract provision. According to BE&K, TAMU misconstrued Chapter 114 as requiring BE&K to prove the merits of its claim—an interpretation foreclosed by the Texas Supreme Court's decision in *Pepper Lawson Horizon International Group, LLC v. Texas Southern University*, 669 S.W.3d 205 (Tex. 2023) (per curiam). BE&K also argued that it substantially complied with the Agreement's notice provision, relying on the McCully affidavit's references to past correspondence about the dispute and information that had been submitted to support BE&K's request for time extensions. Attached to BE&K's opposition was (1) a status update letter from BE&K's counsel to the trial court asserting that BE&K's work on the project was complete, (2) a transcript of McCully's deposition addressing his affidavit, and (3) an affidavit of Read Ballew, BE&K's Senior Vice President and Texas Business Unit Leader, asserting that BE&K had satisfied all conditions precedent.

TAMU replied to BE&K's opposition, arguing that immunity had not been waived, that the notice provision was jurisdictional, and that Ballew's affidavit was factually incorrect. TAMU attached an affidavit of Calvin Boydstun, Chief Executive Officer of TAMU's independent auditor, asserting that he had not received a number of required documents from BE&K.

On March 21, 2025, the trial court held a hearing on TAMU's plea to the jurisdiction and denied the plea. TAMU appeals.

## STANDARD OF REVIEW

A plea to the jurisdiction based on sovereign immunity implicates a trial court's subject-matter jurisdiction and presents a question of law reviewed *de novo*.

4

*State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The court must determine "whether the plaintiff has met its burden to allege facts affirmatively showing the trial court's jurisdiction, but the court 'may [also] consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Pepper Lawson*, 669 S.W.3d at 211 (alteration in original) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

A defendant may challenge the court's jurisdiction through a plea to the jurisdiction based on either the sufficiency of the pleadings or on the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 226–27. When a plea challenges the pleadings, the court, construing the pleadings liberally in favor of the plaintiff, must "determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* at 226. When a plea challenges the existence of jurisdictional facts, the standard "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. The plaintiff has the burden to adduce evidence to "raise a fact question on the jurisdictional issue." *Id.* The Court reviews the evidence in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). In determining whether a genuine issue of material fact exists, we are mindful that we are not permitted to inquire "so far into the substance of the claims that plaintiffs would be required to put on their case to establish jurisdiction." *Pepper Lawson*, 669 S.W.3d at 211 (citing *Bland*, 34 S.W.3d at 554).

## ANALYSIS

In three issues, TAMU asserts that (1) BE&K could not establish jurisdiction without presenting evidence of TAMU's duty to pay as of September 1, 2020, (2)

5

BE&K's failure to comply with a statutory notice provision precludes jurisdiction, and (3) the inability for the jurisdictional defect to be cured necessitates dismissal. As discussed below, we overrule each issue.

## I. TAMU is Subject to the Sovereign Immunity Waiver Under Chapter 114 of the Texas Civil Practice and Remedies Code.

In its first issue, TAMU argues that BE&K failed to provide evidence of TAMU's duty to pay and that Section 114.003's sovereign immunity waiver consequently is inapplicable absent a breach of an express provision of the Agreement. According to TAMU, the trial court was required to grant its plea to the jurisdiction unless TAMU presented evidence that BE&K had (1) completed the work required under the Agreement, (2) submitted documents needed to audit costs, and (3) submitted proper change orders underlying its claims.

BE&K responds that it was not required to present such evidence at this early juncture, invoking the Texas Supreme Court's unanimous holding in *Pepper Lawson*—a recent opinion involving a similar construction contract suit. BE&K interprets *Pepper Lawson* to require only proof that the Agreement is a covered contract under Chapter 114 and proof that BE&K is suing for breach under a covered contract. BE&K argues that it is not required to present any proof that its claim is meritorious at this juncture. Alternatively, BE&K argues that it has presented such evidence.

We agree with BE&K that this issue is controlled by the text of Chapter 114 and the Texas Supreme Court's *Pepper Lawson* opinion. Sovereign immunity protects divisions of state entities, including universities, from lawsuits for damages except where the Legislature or the Constitution waives that immunity. *Pepper Lawson*, 669 S.W.3d at 210. A statute, however, cannot waive immunity except by "clear and unambiguous language." *Id.* (citing Tex. Gov't Code § 311.034). BE&K

6

argues that the Legislature waived immunity for construction-contract suits like this one by enacting a statute that provides:

> [a] state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract, subject to the terms and conditions of this chapter.

Tex. Civ. Prac. & Rem. Code § 114.003. This waiver provision applies to "a claim for a breach of a written contract for engineering, architectural, or construction services . . . brought by a party to the written contract, in which the amount in controversy is not less than $250,000 . . . ." *Id*. § 114.002. The Texas Supreme Court has interpreted this statutory language to be a "clear and unambiguous waiver of immunity for construction-contract suits." *Pepper Lawson*, 669 S.W.3d at 209.

The question therefore becomes what a construction-contract plaintiff must do to defeat a plea to the jurisdiction using Chapter 114's immunity waiver. *Pepper Lawson* answers that question. In that case, construction contractor PLH sued Texas Southern University—a state university—for breach of a construction contract. PLH pleaded that TSU breached the construction contract by withholding pay after the university refused to grant project deadline extensions for delays. *Id*. at 207–09. Specifically, PLH "alleged that TSU (1) entered a written contract with PLH for construction services, (2) did not timely pay the balance owed under the contract, and (3) did not equitably adjust the contract price and time as contractually required for excusable delays." *Id*. at 211. Although PLH's pleadings invoked Section 114.003 of the Remedies Code and identified the breached provisions of the construction contract, TSU asserted sovereign immunity in a plea to the jurisdiction and argued that PLH failed to "plead facts" showing "breach of an express provision of the contract." *Id*. at 209–10. TSU also argued that PLH "could not prevail on its

7

claims under the construction contract and change orders, which were attached to its plea." *Id*. at 211. In response, PLH asserted that its petition "sufficiently invoked Section 114.003's immunity waiver by pleading the express contract provisions TSU allegedly breached and detailing how TSU defaulted on its obligations under those provisions." *Id.* at 210.

The court of appeals had granted TSU's plea, holding that the breach claim against TSU was not subject to Chapter 114's waiver because no express contract provision required TSU to perform as PLH alleged. *Id*. at 210. The Texas Supreme Court reversed, holding that "PLH was not required to prove that 'the parties' contract unambiguously waives TSU's immunity.'" *Id.* at 211. Nor was PLH required to show "breach of an express provision of the parties' contract." *Id.* By requiring such proof, the court of appeals "conflated statutory-construction rules with contract interpretation," improperly requiring PLH "to prove its case." *Id.* Rather, the Texas Supreme Court held that PLH "only had to establish that Chapter 114, not the contract, unambiguously waived immunity." *Id.* Accordingly, PLH had carried its burden under Chapter 114 to "allege facts affirmatively demonstrating the court's jurisdiction to hear the cause." *Id*.

The case before this Court is controlled by *Pepper Lawson*. Similar to the contractor in *Pepper Lawson*, BE&K alleged it in its original petition that TAMU (1) entered into the Agreement and (2) breached the Agreement by, among other reasons, refusing time extensions and compensation for delays, failing to pay BE&K for additional work, and refusing to release retainage. BE&K further identified the specific contract provisions TAMU allegedly breached—UGSC Articles 9.6, 10.3, and 11.3. These allegations are sufficient to invoke the immunity waiver of Section 114.003, which only requires TAMU to have entered into a construction services contract for the purposes "adjudicating a claim for breach of an express provision"

8

of the contract. Tex. Civ. Prac. & Rem. Code §§ 114.002–.003; *see also Pepper Lawson*, 669 S.W.3d at 211. Thus, BE&K met its burden to "allege facts affirmatively demonstrating the court's jurisdiction to hear the cause." *Pepper Lawson*, 669 S.W.3d at 211.[1]

Despite the factual commonalities to *Pepper Lawson*, TAMU argues that, because its plea challenges the existence of jurisdictional facts instead of the sufficiency of the pleadings, we should decide this case based on *Miranda*. In *Miranda*, the plaintiff sued the Texas Parks and Wildlife Department for negligence and gross negligence after a tree limb fell on her in a state park. *Miranda*, 133 S.W.3d at 220–21. The Department responded by filing a plea to the jurisdiction, asserting that the claims were "insufficient to invoke a waiver of the Department's sovereign immunity under the standard established in the Tort Claims Act and the recreational use statute." *Id.* at 221–22. The Department attached evidence to its plea, which challenged the factual allegations supporting jurisdiction. *Id.* at 231. Because the evidence established that the Department was not grossly negligent, the court held that the Tort Claims Act's immunity waiver was inapplicable and, therefore, the trial court lacked subject-matter jurisdiction. *Id.* at 232.

Key to *Miranda*'s holding was the "unusual confluence of standards erected by the Legislature for waiver of sovereign immunity in the Texas Torts Claims Act and the recreational use statute." *Id.* at 221. The Court noted that sovereign immunity includes two distinct principles: immunity from suit and immunity from liability. *Id.* at 224. The Tort Claims Act, however, created a "unique statutory scheme in which the two immunities are co-extensive." *Id.*; *see* Tex. Civ. Prac. & Rem. Code § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of

---

[1] The parties do not dispute that the Agreement is subject to Chapter 114. *See* Tex. Civ. Prac. & Rem. Code § 114.002.

liability created by this chapter."). The Act's waiver of immunity to suit was limited to the scope of the liability waiver in the recreational use statute. *Miranda*, 133 S.W.3d at 225; Tex. Civ. Prac. & Rem. Code §§ 101.021, .058. The recreational use statute and relevant case law had established that a governmental unit waived sovereign immunity only if it was grossly negligent. *Miranda*, 133 S.W.3d at 225; *see also* Tex. Civ. Prac. & Rem. Code § 75.002(c)–(d). Thus, *Miranda* presented a circumstance "in which the determination of the subject matter jurisdiction of the court implicate[d] the merits of the parties' cause of action." *Miranda*, 133 S.W.3d at 228. The Court stated that "[d]ue to the standard erected (gross negligence), the determination of whether immunity was waived may require consideration of extrinsic facts after reasonable opportunity for targeted discovery." *Id.* at 233. Though the plaintiff alleged sufficient facts to survive a plea to the jurisdiction on the pleadings, the Department's extrinsic evidence showed a lack of gross negligence, and the plaintiff failed to challenge this finding. *Id.* at 230, 232.

Here, TAMU argued in its plea that jurisdictional facts establishing waiver do not exist because BE&K did not satisfy the conditions precedent that would obligate TAMU to pay. These alleged conditions include BE&K's delivery of written consent of the surety to release retainage, BE&K's delivery of the documentation required for requests for additional costs and time extensions, and BE&K's obligation to complete the project prior to receiving payment. TAMU attached evidence to its plea in the form of the Agreement itself and Brett McCully's affidavit supporting TAMU's claims. TAMU later provided an affidavit from its independent auditor asserting that the auditor did not receive the required documentation from BE&K. TAMU also argues on appeal that BE&K failed to provide sufficient evidence of its compliance with the conditions precedent.

Though TAMU challenges a number of facts asserted in BE&K's pleadings,

these challenges go to the merits of BE&K's cause of action rather than the jurisdictional inquiry. The only jurisdictional facts required for Section 114.003's waiver are (1) TAMU's entry into a contract subject to the provision, (2) BE&K's "claim" for breach of contract, and (3) BE&K's identification of the express contract provisions that TAMU allegedly breached. *See* Tex. Civ. Prac. & Rem. Code § 114.003. Whether TAMU had an obligation to pay and release retainage pursuant to the Agreement's provisions and breached these obligations is a merits inquiry separate from Section 114.003's requirements.

Further, unlike the Tort Claims Act and recreational use statute in *Miranda*, Section 114.003 does not create a circumstance in which the jurisdictional inquiry necessarily "implicates the merits" of BE&K's cause of action. *Miranda*, 133 S.W.3d at 227. The jurisdictional waiver in *Miranda* required the Department to have acted with gross negligence, and an evidentiary challenge to the gross negligence claim was enough to establish an absence of jurisdiction. *See id.* at 225 ("[A] governmental unit waives sovereign immunity under the recreational use statute and the Tort Claims Act only if it is grossly negligent."). In contrast, the plain text of Section 114.003 does not condition waiver on whether a breach actually occurred, but rather on BE&K bringing the claim in the first place. *See* Tex. Civ. Prac. & Rem. Code § 114.003 (waiving immunity for "the purpose of adjudicating a claim for breach of an express provision of the contract"). BE&K did so.

TAMU responds that the court's discussion of conditions precedent in *Pepper Lawson* may suggest that a proper evidentiary challenge to the breach-of-contract claim could implicate the trial court's jurisdiction under Section 114.003. *Pepper Lawson* states that "[t]o the extent the jurisdictional inquiry implicated the merits of PLH's cause of action, TSU failed to conclusively establish that (1) it did not breach an express provision of the contract when it refused to equitably adjust the contract

11

time and price for 'additional costs' incurred for PLH's alleged excusable delays that were within TSU's 'reasonable control' and (2) PLH did not follow the procedures triggering TSU's obligation to pay." *Pepper Lawson*, 669 S.W.3d at 211–12. The court also discussed TSU's failure to properly deny that the contractor satisfied all conditions precedent. *Id.* at 212 ("Because TSU did not specifically deny that PLH satisfied all conditions precedent, the court of appeals erred in holding that PLH failed to plead a cognizable Chapter 114 claim based on any failure to satisfy contractual conditions precedent to requesting a time extension.").

We do not interpret the *Pepper Lawson* court's discussion as a definitive statement that Section 114.003's waiver necessarily implicates the merits of a breach-of-contract claim. The Texas Supreme Court expressly rejected the court of appeals' attempt to decide immunity based on the requirements of the contract rather than Section 114.003. *Id.* at 211. ("But PLH was not required to prove that 'the parties' contract unambiguously waives TSU's immunity from suit for PLH's breach-of-contract claim,' as the court of appeals held. PLH only had to establish that Chapter 114, not the contract, unambiguously waived immunity." (internal citation omitted)). The Texas Supreme Court further reasoned that TSU had "brought forward a host of contract defenses pertaining to the merits of PLH's claims" and attached the contract and change orders to its plea, none of which convinced the court to rule in TSU's favor. *Id.* at 211, 213. Our holding is likewise based on the text of Section 114.003 rather than the provisions of the Agreement or any defenses TAMU asserts. Thus, we refrain from "authoriz[ing] an inquiry so far into the substance of the claims that [BE&K] would be required to put on [its] case to establish jurisdiction." *Id.* at 211.

Even if *Pepper Lawson* required us to consider evidence of BE&K's compliance with conditions precedent to decide jurisdiction, BE&K has met its

12

burden to show a genuine issue of material fact. *See Swanson*, 590 S.W.3d at 550. BE&K submitted Read Ballew's affidavit as evidence that BE&K had satisfied the preconditions to TAMU's payment, including (1) submitting a payment application, (2) completing the project, (3) fully complying with TAMU's audit request, and (4) satisfying all conditions precedent. Though TAMU offered its own evidence to the contrary, Ballew's affidavit is enough to show a fact issue on the satisfaction of the conditions precedent. Reviewing the evidence in the light most favorable to the nonmovant, *id.*, BE&K has met its burden.

We hold that the Legislature waived sovereign immunity pursuant to Section 114.003 and overrule TAMU's first issue.

## II. BE&K's Alleged Failure to Comply with Notice Requirements Does Not Preclude Jurisdiction.

In its second issue, TAMU argues that jurisdiction is precluded by BE&K's failure to provide formal notice of its breach of contract claims in accordance with contractual and statutory requirements. TAMU relies on Section 311.034 of the Texas Government Code, which states that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." BE&K responds that any purported failure to comply with the notice requirements does not preclude TAMU's waiver of sovereign immunity under Chapter 114. BE&K also contends that it substantially complied with the notice requirements.

Chapter 2260 of the Texas Government Code requires units of state government to include a provision in an applicable contract stating that the dispute resolution process under the chapter "must be used to attempt to resolve a dispute arising under the contract." Tex. Gov't Code § 2260.004(a). The Agreement includes such a provision, stating in full:

13

The dispute resolution process provided in Chapter 2260, Texas Government Code, and the related rules adopted by the Texas Attorney General pursuant to Chapter 2260, shall be used by Owner and Contractor to attempt to resolve any claim for breach of contract made by Contractor that cannot be resolved in the ordinary course of business. Contractor shall submit written notice of a claim of breach of contract under this Chapter to the Chancellor of The Texas A&M University System, who shall examine Contractor's claim and any counterclaim and negotiate with Contractor in an effort to resolve the claim.

Relatedly, Section 2260.051(b) of the Texas Government Code requires a contractor to "provide written notice to the unit of state government of a claim for breach of contract not later than the 180th day after the date of the event giving rise to the claim." In addition, Section 114.005 of the Remedies Code states that "[a]djudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit . . . that are stated in the contract subject to this chapter . . . are enforceable. . . ."

This Court has addressed a similar issue in *Texas Southern University v. Westwood Restoration, LLC*, No. 15-24-00064, 2025 WL 2078670 (Tex. App.— 15th Dist. July 24, 2025, no pet.). In *Westwood*, a contractor, invoking the immunity waiver under Chapter 114 of the Remedies Code, sued TSU for breach of contract. *Id.* at *1. TSU filed a plea to the jurisdiction, arguing that the immunity waiver did not apply partly because the contractor "failed to comply with its contractual obligations to use the ADR [alternative dispute resolution] procedures set out in Chapter 2260 of the Government Code before filing suit." *Id.* at *2. We held that the contractor's failure to comply was not a jurisdictional defect. *Id.* at *3. We reasoned that while Chapter 114 makes the ADR requirements "enforceable," it does not make the requirements "jurisdictional." *Id.* ("Yet while Section 114.005 makes these

14

contractual ADR provision [sic] '*enforceable,*' it does not say they are *jurisdictional*.").

We reiterate our holding in *Westwood*. Although the Agreement incorporates the dispute resolution process of Chapter 2260, this suit invokes the immunity waiver of Chapter 114. Section 114.005 states that all "adjudication procedures" in an applicable contract, including both ADR proceedings and "serving notices," are "enforceable." Tex. Civ. Prac. & Rem. Code § 114.005. Similar to the ADR provisions in *Westwood*, Section 114.005 therefore only makes the notice provisions of the Agreement "enforceable" as well, and we refrain from characterizing the Agreement's notice requirement as "jurisdictional" under Chapter 114 when the statute does not require us to do so. Thus, any failure of BE&K to comply with the notice requirements would not preclude jurisdiction.

Further, TAMU's reliance on Section 311.034 of the Government Code is misplaced. *See* Tex. Gov't Code § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."). Chapter 114 concerns *contractual* pre-suit procedures, *not statutory* prerequisites to suit. *Westwood*, 2025 WL 2078670, at *3 n.22 ("Since Chapter 114 enforces only *contractual* pre-suit ADR procedures, state law making *statutory* prerequisites to suit jurisdictional does not apply."). Thus, any enforceable pre-suit procedures under Chapter 114 cannot function as a statutory prerequisite under Section 311.034.

TAMU also argues that Chapter 114 does not preclude a notice requirement for jurisdiction. TAMU contends that the Legislature did not "clearly and unequivocally consent[] to suits that lack a pre-suit notice." According to TAMU, Chapter 114 "does not eliminate the jurisdictional import of notice provisions," and because Chapter 2260 is required in all construction contracts with the state, finding

15

jurisdiction here would mean that notice contracts would be effectively nullified state-wide. These arguments fail. As stated above, Chapter 114 concerns contractual pre-suit procedures, not statutory prerequisites. *See Westwood*, 2025 WL 2078670, at *3 n.22. Our holding does not nullify the notice requirements under the Agreement or Chapter 114. Rather, it recognizes such notice requirements to be only matters of enforcement, not jurisdiction.

We hold that any alleged failure to comply with the notice requirements does not preclude subject-matter jurisdiction. We therefore overrule TAMU's second issue.[2]

### III.  Dismissal is Not Warranted.

In its third and final issue, TAMU argues that dismissal is proper when the evidence disproves jurisdiction. *See Young v. Texas Parks & Wildlife Dep't*, No. 15-24-00052-CV, 2025 WL 1200947, at *7–8. (Tex. App.—15th Dist. Apr. 24, 2025, pet. filed). Because we hold that BE&K has demonstrated jurisdiction under Chapter 114 by alleging breaches of what is indisputably a construction contract, dismissal is not warranted on this ground. We overrule TAMU's third issue.

CONCLUSION

We affirm the trial court's denial of TAMU's plea to the jurisdiction.

/s/ April Farris
April Farris
Justice

---

[2] Because our resolution disposes of the issue entirely, we do not reach the arguments of whether BE&K failed to provide notice or whether BE&K substantially complied with the notice requirements.

Before Chief Justice Brister and Justices Field and Farris.